UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

D. MICHAEL BEARD,                    )
  17 Rubins Walk                     )
  Fredericksburg, Virginia  22405,   )
                                    )
    Plaintiff,                       )
                                      )   Civ. Action No.
       v.                           )
                                      )
ALPHONSO R. JACKSON,                 )
  Secretary Of Housing And           )
  Urban Development,                 )
  451 Seventh Street, S.W.           )
  Washington, D.C.  20410,           )
                                      )
    Defendant.                       )
_____)

## COMPLAINT AND DEMAND FOR JURY TRIAL

### Preliminary Statement

1.)   This is an action by D. Michael Beard who, until his removal, reassignment, and involuntary relocation to Washington, D.C., was employed by the Office of Inspector General ("OIG"") of the Department of Housing and Urban Development ("HUD") to head OIG's Regional Office of Audit headquartered in Ft. Worth, Texas.

2.) Officials in OIG Headquarters in Washington, D.C., removed Mr. Beard from his former supervisory position as Regional Inspector General for Audit, involuntarily reassigned him to a superfluous nonsupervisory position here under penalty of termination, and interfered with Mr. Beard's selection as the Deputy Assistant Inspector General for Audit for the Department of Defense, to retaliate against Mr. Beard for his successful

pursuit of an earlier administrative complaint of discrimination and to discriminate against Mr. Beard on account of his age.

3.)  The only other Director of an OIG Office of Audit involuntarily removed from her position was Saundra G. Elion who, like Mr. Beard, successfully pursued an administrative complaint of discrimination and was involuntarily reassigned to a previously unencumbered, nonsupervisory position in OIG Headquarters in retaliation for her prior protected activity and in order to discriminate against her.

4.)  Mr. Beard, like Ms. Elion, performs no supervisory functions, and is only assigned projects that are suited for lower level auditors on an infrequent, non-recurrent basis.

5.)  This case seeks redress for defendant's unlawful removal of Mr. Beard from his former position as Regional Inspector General for Audit; his involuntary reassignment to Washington, D.C., under penalty of termination; and its interference with Mr. Beard's selection as the Deputy Assistant Inspector General for Audit with the Office of Inspector General of the Department of Defense.  It arises under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e-16, and the Age Discrimination in Employment Act of 1967, 29 U.S.C. §§621 et seq., and seeks:  a.) declaratory and injunctive relief; b.) Mr. Beard's reinstatement in his former position as Regional Inspector General for Audit in HUD OIG Region VI; c.) backpay; d.) liquidated damages; and e.) compensatory damages.  Mr. Beard also seeks an award of the attorneys' fees and costs incurred in

the prosecution of this action and the administrative proceeding which preceded it.

## Parties, Jurisdiction, And Venue

6.) Plaintiff D. Michael Beard was, at all times relevant until his removal and involuntary reassignment to Washington, D.C., the supervisory Regional Inspector General for HUD employed by HUD OIG in HUD Region VI headquartered in Ft. Worth, Texas. Mr. Beard successfully pursued an administrative complaint of discrimination before the actions which underlie this suit, is presently 56 years of age, and resides at the address recited in the caption of this Complaint.

7.) Defendant Alphonso R. Jackson is the Secretary of Housing and Urban Development, the Cabinet official who heads HUD, and is sued in his official capacity only. HUD is a department in the Executive Branch of the federal government, the mission of which is to provide and encourage the provision of moderate and low income housing in the United States. HUD's Office of Inspector General is the entity within HUD which employed plaintiff. Its mission includes preventing and detecting fraud, waste, and abuse by individuals and entities who are engaged in the business of providing, or are the residents of, HUD-sponsored and HUD-financed housing and housing programs through administrative audits and criminal investigations.

8.) Jurisdiction of this Court is based upon 28 U.S.C. §1332; 42 U.S.C. §2000e-16 (incorporating by reference 42 U.S.C. §2000e-5(c)); and 29 U.S.C. §§621, et seq. Venue lies here

3

pursuant to 28 U.S.C. §1391, and 42 U.S.C. §2000e-16 (incorporating by reference 42 U.S.C. §2000-5(f)(3)), because defendant's actions were taken in Washington, D.C., the place to which Mr. Beard was involuntarily relocated, and thereby occurred in this judicial district.

### Statement Of Facts

### Background

9.) Plaintiff D. Michael Beard is a Certified Public Accountant who was appointed to the position of Regional Inspector General for Audit for HUD OIG Region VI headquartered in Ft. Worth, Texas, at the Grade 15 level in October of 1992.

10.) In that position, Mr. Beard was the supervisory official responsible for all audits[1] and audit reports produced by HUD OIG Region VI, among them, audits of public housing authorities, nonprofit organizations, and persons doing business with HUD.  Five states were included within the jurisdiction of OIG Region VI, specifically Texas, Louisiana, New Mexico, Oklahoma, and Arkansas.  HUD audit activities in these states, and in other jurisdictions on an as assigned basis, were

---

[1]  Audits entail the review of financial transactions and dealings of entities which receive HUD funds, among them public housing authorities, contractors, and mortgagees, to ascertain whether their dealings with HUD, its programs, and federal funds, have complied with federal law and regulation.  The end product of an audit is typically an audit report, which details the auditee's compliance and recommends whether sanctions should be sought, either by recovery of public funds, debarment, or other civil or administrative penalty.  OIG investigations, by contrast, focus on potential criminal violations and prosecutions.

performed by auditors under Mr. Beard's supervision or by Mr. Beard himself.

11.) Mr. Beard was first employed by HUD OIG in 1989. Since that time, he personally authored over 70 significant audit reports that identified approximately $200 million in potential savings to the government. These audits have been featured in numerous national newspapers and periodicals; one was featured in a book about the Clinton administration; and another was the subject of two national TV news programs.

12.) Mr. Beard has also served as expert witness for the United States in civil actions and criminal prosecutions, appeared as a key witness for HUD at five Congressional hearings, and supervised and been responsible for the production of countless final audit reports in his former Region.

13.) While serving as the Regional Inspector General for Audit for Region VI, Mr. Beard received an Award for Excellence from the President's Council on Integrity and Efficiency, Audit Manager of the Year and a Special Recognition Award from the HUD Inspector General, an OIG Special Team Award, and 12 Superior Accomplishment Awards.

14.) Mr. Beard's record of performance over 25 years in federal service is creditable and the record of his conduct unblemished. Until the actions which gave rise to this Complaint, he had been a supervisor in the federal government since 1982.

## Earlier Administrative Complaint

15.) In or about 2000, Robert Tighe, a Special Agent employed by HUD OIG in Region VI, initiated the administrative discrimination complaints process alleging that he had been subject to discrimination on account of his race in being denied a promotion.

16.) Mr. Beard had served as one of the two selecting officials for the position which Mr. Tighe claimed was denied him.

17.) Mr. Tighe's case was case eventually denominated <u>Tighe v. Cuomo</u>.

18.) On July 16, 2001, Mr. Beard was required to give deposition testimony in <u>Tighe v. Cuomo</u>.

19.) In his deposition, Mr. Beard testified about the promotional practices and preferences put in place by the then Inspector General of HUD OIG.

20.) In all respects, Mr. Beard's testimony was truthful and accurate.

21.) The testimony rendered by Mr. Beard in <u>Tighe v. Cuomo</u> was unfavorable to HUD OIG and supported Mr. Tighe's allegations that he had been subject to discrimination.

22.) The substance of Mr. Beard's testimony and the fact that it was unfavorable to HUD OIG generally and the former Inspector General in particular were the subjects of discussions between the former Inspector General and members of her senior staff.

23.) After giving deposition testimony in Tighe v. Cuomo, Mr. Beard received an unwarranted reprimand, the first disciplinary action of his career, and was subject to an abusive and hostile work environment which included, but was not limited to, unwarranted interference with Region VI's execution of its audit functions, professional disparagement or Mr. Beard in public and in private, and repeated undermining of Mr. Beard's authority over and relationships with subordinates.

24.) In order to contest the foregoing retaliation for his testimony and discrimination on account of his age, in 2002, Mr. Beard initiated the informal EEO complaints process.

25.) On or about May 6, 2002, Mr. Beard timely filed a formal complaint of discrimination and retaliation, alleging that he had been subject to retaliation on account of his testimony in Tighe v. Cuomo, in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e-16, and the Age Discrimination in Employment Act of 1967, 29 U.S.C. §§621 et seq.

26.) Mr. Beard's complaint identified three HUD OIG management officials as responsible for the discrimination and retaliation against him:  Assistant Inspector General for Audit James Heist, Deputy Assistant Inspector General for Audit Michael Phelps, and General Counsel Bryan Saddler.

27.) Mr. Beard and HUD OIG entered into a Mediation Settlement Agreement on or about November 6, 2002, which resolved the foregoing complaint fully and completely.

28.) The Mediation Settlement Agreement provided for the vitiation and expunction of the reprimand issued to Mr. Beard identified above, the restoration of Mr. Beard's chain of command relationships within HUD OIG, an upgrade in the narrative section of Mr. Beard's last performance appraisal, and payment of $6,000.00 to Mr. Beard.

29.) The Mediation Settlement Agreement between Mr. Beard and HUD OIG was executed on behalf of HUD by Deputy Inspector General Michael Stephens.

**On-Going Discrimination And Retaliation**

30.) Shortly after the Mediation Settlement Agreement was executed, Deputy Inspector General Stephens visited Region VI to be briefed on the results of a Management Assessment Review of that office and to conduct a personal inspection of the region.[2] In addition to briefing Deputy Inspector General Stephens on the results of the Management Assessment Review, the team which conducted it informed Mr. Stephens that Region VI staff was concerned that Assistant Inspector General Heist and Deputy Assistant Inspector General Phelps were attempting to force Mr. Beard to retire or to terminate him.

31.) In response, Deputy Inspector General Stephens personally assured Region VI staff that Mr. Beard was running the audit function in Region VI satisfactorily, and that they had no

---

[2]    A Management Assessment Review is a component of the HUD OIG quality assurance program, by which audit and investigative components are reviewed to ensure their adherence to established standards, practices, and procedures.

cause for concern that his career or assignment as Regional Inspector General for Audit was in jeopardy.

32.) Despite the assurances given by the Deputy Inspector General and Mr. Beard's attempt to restore his professional standing and working relationship in HUD OIG, after entering into the Mediation Settlement Agreement, Mr. Beard continued to be subject to repeated and unwarranted action by HUD OIG to discredit his superior performance, to undermine Mr. Beard's managerial authority, to interfere with Region VI's execution of its audit functions, and to undermine Mr. Beard's authority over and relationships with subordinates.

33.) The foregoing actions included, but were not limited to, refusing to permit Mr. Beard to replace staff lost due to attrition; denying Mr. Beard's proposals to initiate audits in order to prevent him from achieving his performance goals; unnecessarily subjecting audits supervised by Mr. Beard to additional review by junior auditors; refusing to consider Mr. Beard for a cash award due for the performance of Region VI; closing an on-going case with a U.S. Attorney's Office without coordination with Mr. Beard; interfering with Mr. Beard's managerial authority and relationships with subordinates; and unprofessionally denigrating the performance of Mr. Beard and Region VI.

**Involuntary Removal And Reassignment To Washington, D.C.**

34.) On or about December 21, 2004, Mr. Beard was directed by Assistant Inspector General Heist to report to OIG Headquarters in Washington, D.C., on Wednesday January 5, 2005, to discuss a draft audit report that was prepared by a team of auditors under Mr. Beard's supervision with Mr. Heist. Mr. Beard made extensive preparations to discuss the contents of that draft audit and its recommendation that HUD debar several former senior agency officials with Mr. Heist.

35.) Mr. Beard reported to Washington, D.C., as directed. However, at the meeting, the draft audit report and recommendations were not discussed. Instead, Assistant Inspector General Heist handed Mr. Beard a Memorandum which involuntarily removed Mr. Beard from his position as Regional Inspector General for Audit in OIG Region VI, and directed Mr. Beard's reassignment to a nonsupervisory position as a Special Assistant to Deputy Assistant Inspector General Phelps in OIG Headquarters in Washington, D.C., under penalty of termination.

36.) The Special Assistant position to which Mr. Beard was involuntarily reassigned was superfluous and unencumbered prior to his reassignment.

37.) Defendant further directed Mr. Beard to report to his new position in Washington, D.C., on a temporary basis beginning the following Monday, January 10, 2005; and on a permanent basis two months later, March 6, 2005.

10

38.) The Memorandum removing Mr. Beard and reassigning him to Washington, D.C., also contained an extensive discussion about his right to an immediate annuity.

39.) Neither before nor after being reassigned has Mr. Beard had any plans or taken any steps to retire from the federal service.

40.) In Mr. Beard's meeting with Assistant Inspector General Heist, Mr. Heist advised Mr. Beard that his reassignment and relocation were not performance-based.

41.) In his last appraisal, for the period ending January 31, 2004, Mr. Beard received a successful rating on a pass/fail system. At their meeting on January 5, 2005, Assistant Inspector General Heist advised Mr. Beard that it would also be at the successful level. Further, during 2004, Region VI was rated fifth out of the 13 HUD OIG audit Regions in meeting its performance goals.

42.) During the performance cycle immediately preceding his involuntary reassignment, Mr. Beard received a Special Achievement Award for his role in updating Auditor Appraisals nationwide.

43.) Mr. Beard's duties and responsibilities as a Special Assistant to the Assistant Inspector General for Audit are far fewer and far less important than his duties and responsibilities as Regional Inspector General for Audit.

44.) Unlike Mr. Beard's former position as Regional Inspector General for Audit for Region VI, the Special Assistant

position to which Mr. Beard was involuntarily reassigned is not supervisory.

45.) As a Special Assistant to the Deputy Assistant Inspector General for Audit, Mr. Beard has no recurrent job functions to perform, and none that are commensurate with his GS-15 grade level.  Mr. Beard's assignments in the position to which he has been reassigned are essentially _ad hoc_ and make-work typically assigned to junior auditors and support staff.   Mr. Beard's professional exposure has been materially diminished as a result of his reassignment, as has his opportunity for professional advancement.

46.) In removing Mr. Beard from his position as Regional Inspector General for Audit for HUD OIG Region VI and reassigning him to the position of Special Assistant to the Deputy Assistant Inspector General for Audits under penalty of termination, HUD OIG retaliated against Mr. Beard for his prior protected participation in the administrative EEO complaints process denominated _Tighe v. Cuomo_, and discriminated against Mr. Beard on account of his age.

### Interference With Selection As Deputy Assistant Inspector General for Audit of the Department of Defense

47.) In January of 2005, Mr. Beard applied for the position of Deputy Assistant Inspector General for Audit of the Office of Inspector General of the Department of Defense, a position in the Senior Executive Service.

48.) Mr. Beard was exceptionally well-qualified for the foregoing position and was the only candidate referred to the selection official by the selection panel he appointed.

49.) In connection with the foregoing selection process, the selecting official at the Department of Defense solicited an employment reference about Mr. Beard from HUD OIG.  Deputy Assistant Inspector General Phelps responded to this request by giving an unjustified, negative reference about Mr. Beard.

50.) Despite his qualifications, and due to Deputy Assistant Inspector General Phelps' "reference," Mr. Beard was not selected for the position of Deputy Assistant Inspector General for Audit of the Office of Inspector General of the Department of Defense.

51.) In providing the foregoing unjustified, negative reference about Mr. Beard to the Department of Defense and causing his non-selection, HUD OIG retaliated against Mr. Beard for his prior protected activities in a manner that would dissuade a reasonable worker from making or supporting a charge of discrimination.

### Exhaustion Of Administrative Remedies

52.) Mr. Beard timely initiated the informal administrative EEO complaints process on January 21, 2005.

53.) On February 2, 2005, Mr. Beard timely filed a formal administrative complaint of discrimination and retaliation, and timely amended that complaint on April 21, 2005.

54.) Mr. Beard has exhausted the administrative remedies available to him, because more than 180 days have elapsed since he filed and last amended his formal administrative complaint of discrimination without the issuance of a Final Agency Decision.

**COUNT I**
**(Retaliation – Title VII)**

55.) Plaintiff repeats the allegations contained in paragraphs 1 through 54 above, as though fully set forth here.

56.) On or about January 5, 2005, defendant removed plaintiff from his supervisory position as Regional Inspector General for Audit for HUD OIG Region VI in Ft. Worth, Texas, and involuntarily reassigned plaintiff under penalty of termination to a previously unencumbered, nonsupervisory position as Special Assistant to the Deputy Assistant Inspector General for Audit in Washington, D.C., a position which lacked recurrent substantive duties commensurate with plaintiff's background, experience, and grade, and which limited plaintiff's professional exposure and opportunities for advancement.

57.) In involuntarily removing plaintiff from his position as Regional Inspector General for Audit for HUD OIG Region VI in Ft. Worth, Texas, and reassigning plaintiff under penalty of termination to a position as Special Assistant to the Deputy Assistant Inspector General for Audit in Washington, D.C., defendant materially and adversely altered the terms, conditions, and privileges of plaintiff's employment and plaintiff's future employment opportunities, both within and outside of HUD OIG, and

took action against Mr. Beard that would dissuade a reasonable worker from making or supporting a charge of discrimination.

58.) In taking the foregoing actions, defendant retaliated against plaintiff on account of his participation in protected EEO activity, in particular the pursuit of the informal and formal complaint of discrimination and retaliation referred to above in paragraphs 24 through 29.

59.) By retaliating against plaintiff in the manner described above, defendant violated the "participation clause" of Title VII of the Civil Rights Act, 42 U.S.C. §2000e-16 (incorporating by reference 42 U.S.C. §2003-3(a)).

60.) Defendant's violation of plaintiff's civil rights caused him to suffer emotional pain, embarrassment, humiliation, mental anguish, inconvenience, anxiety, depression, and loss of enjoyment of life.

**COUNT II**
**(Age Discrimination)**

61.) Plaintiff repeats the allegations contained in paragraphs 1 through 60 as though fully set forth here.

62.) On or about January 5, 2005, defendant removed plaintiff from his supervisory position as Regional Inspector General for Audit for HUD OIG Region VI in Ft. Worth, Texas, and involuntarily reassigned plaintiff under penalty of termination to a previously unencumbered, nonsupervisory position as Special Assistant to the Deputy Assistant Inspector General for Audit in Washington, D.C., a position which lacked recurrent substantive duties commensurate with plaintiff's background, experience, and

15

grade, and which limited plaintiff's professional exposure and opportunities for advancement.

63.) In involuntarily removing plaintiff from his position as Regional Inspector General for Audit for HUD OIG Region VI in Ft. Worth, Texas, and reassigning plaintiff under penalty of termination to a position as Special Assistant to the Deputy Assistant Inspector General for Audit in Washington, D.C., defendant materially and adversely altered the terms, conditions, and privileges of plaintiff's employment and plaintiff's future employment opportunities, both within and outside of HUD OIG.

64.) In taking the foregoing actions, defendant discriminated against plaintiff on account of his age, which at the time was 55 years of age.

65.) By discriminating against plaintiff in the manner described above, defendant violated the Age Discrimination in Employment Act of 1967, 29 U.S.C. §§621 et seq., willfully, in bad faith, and without reasonable grounds.

66.) Defendant's violation of plaintiff's civil rights caused him to suffer emotional pain, embarrassment, humiliation, mental anguish, inconvenience, anxiety, depression, and loss of enjoyment of life.

### COUNT III
### (Retaliation Under The ADEA)

67.) Plaintiff repeats the allegations contained in paragraphs 1 through 66 as though fully set forth here.

68.) On or about January 5, 2005, defendant removed plaintiff from his supervisory position as Regional Inspector

General for Audit for HUD OIG Region VI in Ft. Worth, Texas, and reassigned plaintiff under penalty of termination to a previously unencumbered, nonsupervisory position as Special Assistant to the Deputy Assistant Inspector General for Audit in Washington, D.C., a position which lacked recurrent substantive duties commensurate with plaintiff's background, experience, and grade, and which limited plaintiff's professional exposure and opportunities for advancement.

69.) In involuntarily removing plaintiff from his position as Regional Inspector General for Audit for HUD OIG Region VI in Ft. Worth, Texas, and reassigning plaintiff under penalty of termination to a position as Special Assistant to the Deputy Assistant Inspector General for Audit in Washington, D.C., defendant materially and adversely altered the terms, conditions, and privileges of plaintiff's employment and plaintiff's future employment opportunities, both within and outside of HUD OIG, and took action against Mr. Beard that would dissuade a reasonable worker from making or supporting a charge of discrimination..

70.) In taking the foregoing actions, defendant retaliated against plaintiff on account of his participation in protected EEO activity, in particular the pursuit of the informal and formal complaint of discrimination and retaliation referred to above in paragraphs 24 through 29.

71.) By retaliating against plaintiff in the manner described above, defendant violated the Age Discrimination in Employment Act of 1967, 29 U.S.C. §§621 et seq., willfully, in

bad faith, and without reasonable grounds.

72.) Defendant's violation of plaintiff's civil rights caused him to suffer emotional pain, embarrassment, humiliation, mental anguish, inconvenience, anxiety, depression, and loss of enjoyment of life.

### COUNT IV
### (Retaliation — Title VII)

73.) Plaintiff repeats the allegations contained in paragraphs 1 through 72 above, as though fully set forth here.

74.) In January of 2005, Mr. Beard applied for the position of Deputy Assistant Inspector General for Audit of the Office of Inspector General of the Department of Defense, a position I the Senior Executive Service.

75.) Mr. Beard was exceptionally well-qualified for the foregoing position and was the only candidate referred to the selection official by the selection panel he appointed.

76.) In connection with the foregoing selection process, the selecting official at the Department of Defense solicited an employment reference about Mr. Beard from HUD OIG. HUD OIG responded with an unjustified, negative reference about Mr. Beard.

77.) Despite his qualifications, due to HUD OIG's "reference," Mr. Beard was not selected for the position of Deputy Assistant Inspector General for Audit of the Office of Inspector General of the Department of Defense.

78.) In providing the foregoing unjustified, negative reference about Mr. Beard to the Department of Defense, HUD OIG

retaliated against Mr. Beard for his prior protected activities in a manner that would dissuade a reasonable worker from making or supporting a charge of discrimination, and materially and adversely altered the terms, conditions, and privileges of plaintiff's future employment.

79.) By retaliating against plaintiff in the manner described above, defendant violated the "participation clause" of Title VII of the Civil Rights Act, 42 U.S.C. §2000e-16 (incorporating by reference 42 U.S.C. §2003-3(a)).

80.) Defendant's violation of plaintiff's civil rights caused him to suffer emotional pain, embarrassment, humiliation, mental anguish, inconvenience, anxiety, depression, and loss of enjoyment of life.

**COUNT V**
**(Retaliation Under the ADEA)**

81.) Plaintiff repeats the allegations contained in paragraphs 1 through 81 as though fully set forth here.

82.) In January of 2005, Mr. Beard applied for the position of Deputy Assistant Inspector General for Audit of the Office of Inspector General of the Department of Defense, a position in the Senior Executive Service.

83.) Mr. Beard was exceptionally well-qualified for the foregoing position and was the only candidate referred to the selection official by the selection panel he appointed.

84.) In connection with the foregoing selection process, the selecting official at the Department of Defense solicited an employment reference about Mr. Beard from HUD OIG.  HUD OIG

responded with an unjustified, negative reference about Mr. Beard.

85.) Despite his qualifications, due to HUD OIG's "reference," Mr. Beard was not selected for the position of Deputy Assistant Inspector General for Audit of the Office of Inspector General of the Department of Defense.

86.) In providing the foregoing unjustified, negative reference about Mr. Beard to the Department of Defense, HUD OIG retaliated against Mr. Beard for his prior protected activity in a manner that would dissuade a reasonable worker from making or supporting a charge of discrimination, and materially and adversely altered the terms, conditions, and privileges of plaintiff's future employment.

87.) By retaliating against plaintiff in the manner described above, defendant violated the Age Discrimination in Employment Act of 1967, 29 U.S.C. §§621 et seq., willfully, in bad faith, and without reasonable grounds.

88.) Defendant's violation of plaintiff's civil rights caused him to suffer emotional pain, embarrassment, humiliation, mental anguish, inconvenience, anxiety, depression, and loss of enjoyment of life.

## PRAYER FOR RELIEF

Wherefore, plaintiff D. Michael Beard respectfully requests that the Court enter judgment in his favor and award him the following relief.

A.    An Order declaring that defendant violated plaintiff's civil rights under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e-16, and the Age Discrimination in Employment Act of 1967, 29 U.S.C. §§621 et seq., and restraining and enjoining defendant from further violations.

B.    An Order reinstating plaintiff as the Regional Inspector General for Audit with the Office of Inspector General of the Department of Housing and Urban Development in its Regional Office in Ft. Worth, Texas.

C.    Compensatory damages in an amount to be determined at trial to compensate plaintiff for the emotional pain, embarrassment, humiliation, mental anguish, inconvenience, career loss, loss of professional reputation, and loss of enjoyment of life caused by defendant's unlawful actions.

D.    Backpay in the increased amount that plaintiff would have received had he been selected for the position of Deputy Assistant Inspector General for Audit with the Department of Defense and liquidated damages in a like amount.

E.    Record correction.

F.    The attorneys' fees and costs incurred by plaintiff.

G.    Such other relief as may be just and appropriate.

## JURY DEMAND

Plaintiff requests a trial by jury of all issues so triable.


Respectfully submitted,


_____
Robert C. Seldon, Esq.
  D.C. Bar No. 245100


_____
Molly E. Buie, Esq.
  D.C. Bar No. 483767
Robert C. Seldon & Associates, P.C.
1319 F Street, N.W.
Suite 305
Washington, D.C.  20004
(202) 955-6968

Counsel for Plaintiff