UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| D. MICHAEL BEARD, )<br>)<br>    Plaintiff, )<br>)<br>    v. )<br>)<br>ALPHONSO R. JACKSON, )<br>    Secretary, U.S. Dept. of )<br>    Housing and )<br>    Urban Development, )<br>)<br>    Defendant. )<br>_____) | Civil Action No. 06-00756 (GK) |

**STATEMENT OF MATERIAL FACTS NOT IN GENUINE DISPUTE**

Pursuant to Local Rule 7(h), Defendant respectfully submits this statement of material facts as to which it contends there is no genuine dispute.

1. Plaintiff became an employee of HUD OIG in 1988, as an Assistant Regional Inspector General for Audit ("ARIGA") in Region IV, which is headquartered in Atlanta, Georgia. See Exhibit 1 (Deposition of D. Michael Beard) ("Beard Dep.") at 9:8-14.

2. In October 1992, Plaintiff became the Regional Inspector General for Audit ("RIGA") for Region VI, which is headquartered in Fort Worth, Texas. See id. at 9:2-5. Region VI includes Texas, Louisiana, New Mexico, Oklahoma, and Arkansas. See Complaint at ¶ 10.

**A.   Plaintiff's Prior Protected Activities**

3. Robert Tighe, a Special Agent employed by the Defendant in Region VI, filed an administrative complaint of discrimination on or about 2000, claiming that he was

      not selected for a promotion because of his race. See Complaint at ¶ 15.

4. On July 16, 2001, Plaintiff provided deposition testimony in support of Mr. Tighe's administrative complaint, a case eventually denominated Tighe v. Cuomo. See Complaint at ¶¶ 17-18.

5. On or about June 2001, James A. Heist (born 1954) replaced Ms. Gaffney as the senior official at HUD OIG, becoming the Acting Deputy Inspector General for approximately two months. See Exhibit 1 (Beard Dep.) at 16:20 - 17:2; Exhibit 6 (Deposition of James Alan Heist) ("Heist Dep.") at 54:4-7; 117:2-3.

6. While Mr. Heist was the Acting Deputy Inspector General, he "learned that there was an EEO complaint and that [Plaintiff] gave a deposition." See Exhibit 6 (Heist Dep.) at 11-12.

7. Mr. Heist was not a party in Tighe v. Cuomo. See Exhibit 7 (Heist Affidavit) at 1.

8. "Sometime in 2001 [Mr. Heist] made Mr. [Michael] Phelps (born 1945) the first-line supervisor for all of the regional inspectors general" for Audit, including Plaintiff. See Exhibit 1 (Beard Dep.) at 22:2-24; Exhibit 2 (Deposition of Michael R. Phelps) ("Phelps Dep.") at 53:5-6; Exhibit 4 (Hierarchy Chart).

9. In February 2002, Mr. Phelps gave Plaintiff a reprimand. See Exhibit 1 (Beard Dep.) at 37:20-22.

10. In February 2002, Mr. Phelps gave Plaintiff an attachment to his performance evaluation which was critical of his performance. See Exhibit 1 (Beard Dep.) at 38:22 - 39:3; Exhibit 11 (Performance Rating attachment). At the same time, Mr. Phelps verbally told Plaintiff that he was difficult to manage. See Exhibit 1

(Beard Dep.) at 39:19-24; 41:1-8; Exhibit 19 (Informal EEO Complaint) at 3 ¶ 5.

11. Mr. Phelps also told Plaintiff that he frequently failed to follow HUD policy and gave Plaintiff three examples. See id.

12. A March 28, 2002, memoranda informs Plaintiff of management's concern about Plaintiff espousing negative views of headquarters to his staff and "poisoning their views of the organization." See Exhibit 1 (Beard Dep.) at 46:13-25; Exhibit 20 at 5.

13. Plaintiff filed an administrative complaint of discrimination and retaliation in May 2002. See Exhibit 1 (Beard Dep.) at 38:4-8; Complaint at ¶ 25.

14. Plaintiff named "Assistant Inspector General for Audit James Heist, Deputy Assistant Inspector General for Audit Michael Phelps, and General Counsel Bryan Saddler," as the alleged discriminating officials. See Complaint at ¶ 26.

15. On December 4, 2002, a Mediation Settlement Agreement resolving Plaintiff's administrative complaint was formally approved. See Exhibit 12 (Mediation Settlement Agreement).

16. Mr. Michael P. Stephens (born 1947), the Deputy Inspector General, was the management representative for the agreement. See Exhibit 12; Complaint at ¶ 29; Exhibit 5 (Deposition of Michael P. Stephens) ("Stephens Dep.") at 36:1-2.

17. Plaintiff admits that Mr. Stephens communicated to him at the time, that the motivation for settling the administrative complaint was to start anew. See Exhibit 1 (Beard Dep.) at 72:18-25; 116:13-17.

18. Plaintiff did not file any administrative complaints or otherwise engage in any

protected activity during 2003 or 2004.  See Exhibit 1 (Beard Dep.) at 51:19-23; 54:4-16; 72:2-7.

19. Plaintiff did not engage in protected activity until January 21, 2005, when he initiated the informal administrative EEO complaints process underlying this lawsuit.  See id. at 48:51:17-18; Complaint at ¶ 52.

**B.   Plaintiff's Reassignment To Washington, D.C.**

20. Under Inspector General Susan Gaffney, Plaintiff had a significant amount of autonomy to manage Region VI.  See Exhibit 1 (Beard Dep.) at 17:16-18:3.

21. Plaintiff preferred the decentralized system because he believed that "[i]t's easier to motivate people when they have more input into the products they are working with.  And it's more efficient."  See id. at 25:12-15.

22. The management style changed significantly in March 2002, when Kenneth Donahue became the new Inspector General at HUD OIG.  See Exhibit 1 (Beard Dep.) at 16:20 - 17:6; Exhibit 2 (Deposition of Michael R. Phelps) ("Phelps Dep.") at 26:11-20.

23. Mr. Donahue insisted upon adherence "to the chain of command, and he announced that empowerment was over."  See Exhibit 1 (Beard Dep.) at 23:17-23. The phrase "empowerment was over" meant "[t]hat the regional inspectors general and the special agents in charge were going to have more of their actions approved in headquarters."  See id. at 24:2-6.

24.  "[A] new directorate was created called Technical Oversight and Planning.  And all audit decisions were sent to TOP . . ."  See id. at 18:23-25.

25. Specifically, TOP was "responsible for overseeing the work of ten regional offices, reviewing drafts, reports, providing comments on those reports, those comments were provided to the inspector, Assistant Inspector General for Audit Jim Heist, who passed the comments on to the" regional offices. See Exhibit 3 (Deposition of Stanley J. McLeod) ("McLeod Dep.") at 12:7-12.

26. Plaintiff's region submitted the Community Planning & Development draft audit to HUD Headquarters. See Exhibit 5 (Stephens Dep.) at 33:2-12.

27. "[T]here was great concerns by the auditee [CPD] and others that there were significant inaccuracies in that [draft audit] report.." See id. at 33:16-18.

28. Mr. Donahue, the Inspector General, asked Mr. Stephens, the Deputy Inspector General, "to get involved and resolve" the problems with the CPD draft audit. See id. at 34:1-2; 36:1-2; Exhibit 4.

29. To complete the CPD audit, Mr. Stephens (Deputy Inspector General), Mr. Heist (Assistant Inspector General for Audit), and Mr. Phelps, (Deputy Assistant Inspector General for Audit), "decided collectively to bring in other auditors from other regions, and [they] did so at considerable cost and time . . ." See Exhibit 5 (Stephens Dep.) at 34:8-15.

30. A problem with Region VI's work product involved draft audit reports that lacked proper criteria to support the findings. See Exhibit 6 (Deposition of James Alan Heist) ("Heist Dep.") at 90:9-11; Exhibit 8 (Affidavit of Michael R. Phelps) ("Phelps Affidavit") at 2.

31. Plaintiff admits that he reviewed the CVR audit before it was sent to

Headquarters, and that using A-87 was incorrect. See Exhibit 1 (Beard Dep.) at 68:19 - 69:13.

32. When legal issues were not fully vetted, "TOP had to take [their] staff and go and deal with the legal staff in trying to determine what was the right criteria to use." See Exhibit 3 (McLeod Dep.) at 65:12-16.

33. The CVR audit demonstrates Plaintiff's failure to adhere to OIG policy with respect to submitting a survey report. See Exhibit 8 (Phelps Affidavit) at 2.

34. The CVR audit demonstrates Region VI's use of inappropriate language. See Exhibit 6 (Heist Dep.) at 99:11-15; Exhibit 18 (Heist Memorandum) at 10.

35. Plaintiff's supervisors were concerned about Plaintiff's attitude towards Headquarters and the impact it was having on the Region VI staff. See Exhibit 6 (Heist Dep.) at 114:10-115:1; 116:9-13; Exhibit 5 (Stephens Dep.) at 31:17 - 32:2; 32:8 - 33:1; Exhibit 2 (Phelps Dep.) at 63:10-17; 64:2-13.

36. Mr. McLeod and his TOP staff experienced the argumentative attitude emanating from Region VI. See Exhibit 3 (McLeod Dep.) at 73:18 - 74:6.

37. Management concluded that Plaintiff could not adjust to the centralized management style. See Exhibit 6 (Heist Dep.) at 116:2-19.

38. Management decided "some time in December 2004," to reassign Plaintiff to the position of Special Assistant to the Deputy Assistant Inspector General for Audit, which is located in Washington, D.C. See id. at 62:8-21; 73:12-19; Exhibit 9 (January 5, 2005 Memorandum).

39. On January 5, 2005, Plaintiff reported to Headquarters for the meeting with

        management, wherein they informed him of his reassignment to Headquarters and the reasons for that decision. See Complaint at ¶ 34; Exhibit 6 (Heist Dep.) at 108:4 - 110:10.

40. The person chosen to replace Plaintiff as RIGA in Region VI was Frank Baca. See Exhibit 6 (Heist Dep.) at 117:6-7.

41. Mr. Heist was the selecting official in hiring Frank Baca. See id. at 118:6-8.

42. Mr. Baca, like Plaintiff, was born in 1949. See Exhibit 1 (Beard Dep.) at 79:1-3.

C. **Mr. Phelps's Employment Reference In January 2005**

43. In January 2005, Plaintiff applied for the position of Deputy Assistant Inspector General for Audit with the Office of Inspector General for the Department of Defense. See Complaint at ¶ 47.

44. Mr. Robert Reardon from the Department of Defense, called Mr. Phelps and asked him "to provide [his] views of the [Plaintiff] as an employee as he was considering the [Plaintiff] for a position with his agency." See Exhibit 8 (Phelps Affidavit) at 6; Exhibit 2 (Phelps Dep.) at 18:5-11.

45. Mr. Phelps "told Mr. Reardon a lot of positive things about the [Plaintiff]." See Exhibit 8 (Phelps Affidavit) at 6; Exhibit 2 (Phelps Dep.) at 19:2-6.

46. Mr. Phelps told Mr. Reardon that Plaintiff "could not get in step with that new direction [toward centralized management], which is why it was necessary to bring [Plaintiff] to Headquarters as opposed to allowing him to continue to run a region." See Exhibit 8 (Phelps Affidavit) at 6.

Respectfully submitted,

/s/
JEFFREY A. TAYLOR, DC Bar #498610
United States Attorney

/s/
RUDOLPH CONTRERAS, DC Bar #434122
Assistant United States Attorney

/s/
KAREN L. MELNIK, DC Bar #436452
Assistant United States Attorney
555 4th Street, N.W.
Washington, D.C. 20530
(202) 307-0338


Of Counsel:
Tiffanie Smith
U.S. Department of Housing and Urban Development
Washington D.C.

Richard Johnson
Office of Inspector General
Washington D.C.