

U.S. DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT
## Office of Inspector General
451 7th St., S.W.
WASHINGTON, D.C. 20410-4500



EXHIBIT

10

DEC 17 2004

MEMORANDUM FOR: D. Michael Beard, Regional Inspector General for Audit, 6AGA

FROM: James A. Heist, Assistant Inspector General for Audit, GA

SUBJECT: Housing Authority of New Orleans Contracts With CVR Associates, Inc. New Orleans, LA

As noted in my email to you dated October 27, 2004, I directed TOP to review this assignment. Attached is their report on this review. It is evident that the report as presently drafted cannot be issued. We found problems with inadequate finding support, the use of inappropriate criteria and non-compliance with several elements of the Audit Operations Manual and Government Auditing Standards. We carefully examined the support for each of your draft report recommendations. Many of the contract problems squarely rest with HANO and you performed insufficient work at HANO to make recommendations for corrective actions.

TOP concluded and I concur that there is no need for a formal audit report, and that the one remaining matter can be covered in two pieces of correspondence signed by you.

Prepare a letter to the Louisiana State Ethics Board regarding the ethical violation of Kevin Marchman in accepting a $20,000 payment from CVR Associates. Provide detail to the Board of your audit evidence, how you obtained such evidence and request a periodic report on the status of the referral.

Prepare a memorandum to the Assistant Secretary of Public and Indian Housing to inform him of the letter to the Louisiana State Ethics Board.

I believe we can accomplish our primary reporting mission through this correspondence. Please submit this correspondence for TOP review within the next two weeks.

Attachment

Technical Oversight and Planning Division
Report on Review of Draft Audit Report
Housing Authority of New Orleans (HANO)
Contracts with CVR Associates Inc.

We provided comments on the initial draft report and referred the report to IG Counsel to answer several specific questions on contractual matters. Moreover, one of Counsel's attorneys visited Ft. Worth and discussed the report with Region 6 staff. Region 6 had our initial comments and Counsel's comments for consideration in preparing the most current draft. The revised discussion draft did not contain sufficient evidence to justify the six findings and associated recommendations as discussed in the following paragraphs.

Findings and Recommendations:

*Region 6 recommends in 1A that HUD direct the HA to initiate legal action to seek recovery of the $145,625 for the out of scope work CVR initiated.*

On page 11, the discussion draft explains that the HA amended the contract to retroactively include the out of scope work. Region 6's evidence did not demonstrate that the Assistant Secretary for PIH in his capacity as acting Board for HANO did not approve the disbursement to CVR for $145,625. Consequently, the audit evidence is insufficient to justify recovery of the $145,625.

*Region 6 recommends in 1B that HUD direct the HA to repay the $444,042 it inappropriately paid after the contract expired.*

Region 6's report did not provide any evidence that the services were actually performed after August 12, 1999 as opposed to the billings just being late. Further, the discussion draft states that extending the contract beyond 2 years would have required approval from HUD. Region 6's evidence did not demonstrate that the Assistant Secretary for PIH in his capacity as acting Board for HANO did not approve both the contract extension and each individual disbursement. Consequently, the audit evidence is insufficient to justify recovery of the $444,042.

*Region 6 recommends in 1C that HUD take appropriate sanctions against CVR Associates, Inc and its principals.*

This recommendation was based on the first two recommendations that are not supported.

*Region 6 recommends in 1D that HUD take appropriate administrative sanctions against former Authority administrators for actions taken in the administration of this contract.*

As discussed above, Region 6 did not demonstrate that the HA actions were never authorized.

*Region 6 recommends in 2A that HUD direct the HA to initiate legal action to seek recovery of the $1,088,898 CVR overcharged for individual subcontractors and recommendation 2B is to initiate legal action to recover the $68,345 CVR overcharged for third-party invoices.*

IG Counsel advised in their memorandum that they would be glad to examine a revised draft to assess whether a basis for action against CVR exists under the FAR. Region 6's revised discussion draft did not change. The revised draft does not present the evidence to demonstrate that CVR violated the criteria in FAR as requested by IG Legal Counsel.

*Region 6 recommends in 2C that HUD take appropriate administrative sanctions against CVR Associates, Inc and its principals and 2D recommends appropriate administrative sanctions against former Authority administrators.*

The revised discussion draft did not contain the evidence as requested by IG Counsel, in their memorandum, to demonstrate that CVR principals and former HA administrators violated the FAR and are subject to administrative sanctions.

*Region 6 recommends in 2E in the initial discussion draft that HUD should refer to the IRS for resolution of whether CVR misclassified employees as independent contractors.*

IG Counsel advised in their memorandum that until evidence presented in the draft report demonstrates that such misclassifications (of subcontractors) falls within the OIG's authority, there is no pressing reason to consult the IRS on this issue other than to foster comity between agencies. The revised draft report contained the same evidence and recommendation as the report reviewed by IG Counsel.

*Region 6 recommends that HUD direct the HA to initiate legal action to seek recovery of duplicate billings in 3A in the amount of $18,902 for subcontractor Casterline & Associates, in 3B the amount of $6,116 in the initial discussion draft and increased to $7,206 in the revised draft for other items, and in 3C the amount of $22,500 for expenses related to another contract.*

On page 25 of the draft report, footnote 30, it states due to the numerous invoices, personnel, independent subcontractors, accounts, poor recording keeping by CVR, it is undeterminable whether all such duplicate costs were detected. Conversely, CVR's poor recording keeping may not disclose the HA repayments or offsets for duplicate billings. Region 6's audit work did not check HA records for recovery or offset at a later date.

*Region 6 recommends in 3D that HUD direct the HA to initiate legal action to seek recovery of the $26,421 for amounts CVR over billed and for questioned travel airfare upgrades, tips, and other ineligible and abusive charges.*

IG Counsel advised in their memorandum that finding 3 mistakenly analyzes CVR's travel costs using A-87. IG Counsel stated that A-87 does not apply to CVR because it is a for-profit entity and CVR's costs must be analyzed under FAR. The revised draft increased the questioned amount to $36,738 but did not delete the reference to A-87 and did not demonstrate that the FAR was violated.

*Region 6 recommends in 3E that HUD take appropriate sanctions against CVR Associates, Inc and its principals.*



We do not agree that a debarment action is appropriate because the dollar amounts in this finding are minor.

*Region 6 recommends that HUD direct the HA to initiate legal action to seek recovery in 4A of $22,107 for off-site office space, in 4B of $20,208 for telephone expenses, in 4C of $36,215 for clerical support, and in 4D to initiate administrative sanctions against CVR principals.*

The initial draft contained finding 4 captioned as the Authority inappropriately subsidized CVR business expenses. IG Counsel reviewed the criteria for the finding and stated that the finding did not offer a strong basis for action regarding inappropriate charges. IG Counsel recommended that subsequent drafts explore an alternative theory that CVR's expenses are unrelated to its contractual duties and offered to evaluate the legal sufficiency of this theory at that time. The 10-27-04 draft revised the criteria for finding 4 modified on page 33 in one paragraph and contained the same recommendation with the exception of increasing the amount questioned by a minor amount. The discussion draft changes do not provide sufficient evidence that CVR expenses are unrelated to the contractual duties.

*Region 6 recommends in 5A that HUD direct the HA to repay its program $131,840.*

The Assistant Secretary for Public and Indian Housing, also fulfilling the dual responsibility as the Board of HANO, approved the contract and authorized the disbursement of $131,840. The draft report inappropriately recommends that HUD undo what it previously authorized.

*Region 6 recommends in 5B that HUD take appropriate administrative sanctions against former Authority administrators.*

The HA former administrators were performing their duties as directed by HUD and in accordance with the provision of the Cooperative Endeavor Agreement.

*Region 6 recommends in 6A that HUD refer the apparent conflicts of interests to the state Ethics Panel for resolution.*

IG Counsel stated that finding number 6 should be pared down significantly. Specifically, the irrelevant points that do not bear upon the finding include, but are not limited to, CVR enjoyment of a decade long relationship, HANO's counsel advise on the ban, and whether HUD exonerated Mr. Marchman of federal ethics violation in footnote 54.

The finding was not pared down significantly and the irrelevant points remain. The footnote reference was deleted but the other two references remain.

This issue can be addressed in a letter to the State recommending action against Mr. Marchman. IG can take this action without obtaining HUD approval or requesting HUD to take the action. You should notify the Assistant Secretary for Public and Indian Housing that the memo has been sent and its contents.

*Region 6 recommends in 6B that HUD take appropriate administrative action against CVR Associates Inc. and its principals.*

The draft report does not provide sufficient specific evidence against CVR principals or the names of the principals to justify the debarment action.

*Region 6 recommends in 6C that HUD take appropriate administrative action against Mr. Marchman and Ms. Hill.*

Region 6 has already prepared a referral on Ms. Hill and that should be sufficient to address this problem. With respect to Mr. Marchman we have discussed this with Counsel. We know that the contract schedules should have been attached and maintained, but whether failure to do so constitutes an offense indicating a lack of business integrity seems highly suspect. Incompetence, perhaps, but probably not a lack of integrity. Unless someone prosecutes Marchman successfully -- and for misdeeds in connection with maintaining the contract documents, not for taking CVR money within the 2-year post-employment ban -- this debarment theory does not meet the criteria for a debarment action as set fort in applicable regulations.

## IG Audit Operations Manual and Government Auditing Standards:

Audit Operations Manual (AOM) paragraph 4-2A5(3) states that auditors must describe in narrative what items are selected, the selection process limitations if any and resulting conclusions in the Objective, Scope, and Methodology paragraph. For the most part this was accomplished. However, in footnote 35 the draft report states we performed limited testing to determine if CVR may have charged the Authority for work performed for other housing authorities or charged more than one housing authority for the same expenses. The results were inconclusive and further work was not performed due to time constraints. The revised discussion draft did not disclose the limitation on time in the Objective, Scope and Methodology paragraph.

AOM paragraph 3-16A3 states that findings must be fully and objectively developed and presented in an unbiased manner. Further, the Government Auditing Standards paragraph 8.46 states objectivity requires that the presentation of the entire report be balanced in content and tone. The Government Auditing Standards, paragraph 8.47 elaborates to state that tone should be balanced by requiring that reports present sound and logical evidence to support conclusions while refraining from using adjectives or adverbs that characterize evidence in a way that implies criticism or unsupported conclusions. We informed Region 6 in commentary on the initial draft that biased terms were noted and should be deleted. The revised report contains the same biased words. The lists of biased words and or phrases are on the following table.

Attachment

| Page/Paragraph | Phrased Word/Phrase | Page/Paragraph | Phrased Word/Phrase |
|---|---|---|---|
| iii/1st | Permeated | 33/1st | Hid |
| iii/1st | Notoriously | 33/4th | Frugal |
| iii/1st | reap windfall profits | 34/2nd | Extravagance |
| iii/2nd | Harmed | 34/1st | Extravagance |
| 1/1st | Ineptitude | 34/2nd | Appears |
| 1/2nd | Founder | 34/3rd | wasteful spending |
| 4/1st | Steer business | 34/4th | Extravagant |
| 4/2nd | Apparent | 35/1st | Buried |
| 4/2nd | Permeated | 35/1st | Appears |
| 7/1st | Notoriously | 35/4th | Appear |
| 7/1st | exploit flaws | 36/1st | Pervade |
| 7/1st | unduly enriching | 37/1st | Concealed |
| 9/3rd | exploit the Authority | 36/caption | Exploited |
| 9/4th | Windfall profits | 39/title | Steered |
| 11/1st | free rein | 39/1st | Appears |
| 12/2nd | Conjured up | 39/1st | Steer business |
| 12/3rd | poor management acumen | 39/1st | Apparently futile effort |
| 13/1st | Flawed | 39/3rd | Futile |
| 13/1st | cannot take advantage | 42/3rd | Double dipping |
| 15/1st | CVR implied | 44/caption | Sloppy |
| 15/1st | CVR may have violated | 44/5th | Defiance |
| 18/2nd | bait and switch | 45/5th | Suggested |
| 18/4th | Fledgling | 49/title | Permeated |
| 18/4th | Miniscule | 49/1st | May |
| 19/4th | bottom line | 49/1st | Appear |
| 20/1st | Windfall | 49/1st | Apparent |
| 23/Title | Abusive | 49/caption | May have |
| 23/1st | Abusive | 49/2nd | May have |
| 24/1st | Sloppy | 51/caption | Apparent |
| 24/1st | Inept | 51/4th | Appears |
| 25/title | Sloppy | 51/3rd | Apparent |
| 26/2nd | Benign | 52/1st | Apparent |
| 26/2nd | Indulgences | 52/2nd | Ms. Hill's boyfriend |
| 26/2nd | Abusive | 53/1st | Ms. Hill's boyfriend |
| 27/3rd | Appeared | 53/1st | Cavalier |
| 30/2nd | Well-paid | 53/2nd | Boyfriend |
| 30/2nd | Exploit | 53/2nd | May have |
| 30/title | Haphazardly | 59/1st | May not |
| 31/1st | Apparently | 59/4th | Believe |

Government Auditing Standards describe the elements for a quality report including being complete and concise. In paragraph 8.41 the Government Auditing Standards require that the report contain all evidence needed to satisfy the audit objectives and promote an adequate and correct understanding of the matters reported. Paragraph 8.53 requires that the report be no longer than necessary to convey and support the message. It states further that extraneous detail detracts from a report and may even conceal the real message and may confuse or distract the user.

The revised discussion draft does not comply with the standards for being complete and concise. In the draft report's Background section on page 1 in the first paragraph the discussion draft states "HUD allowed the Authority to manipulate itself off the troubled list through the use of self-certified performance scores". In the Background section beginning on page 3, the discussion draft states that the Authority awarded three contracts to CVR including the contract for technical assistance for $2,778,240 and on page 4 the discussion draft discusses the technical assistance contract in detail. The discussion about the troubled list and technical assistance contract is extraneous detail because the discussion draft did not demonstrate its relevance to the audit objectives.

AOM paragraph 3-17c2 states that auditors must provide HUD management with as much information as possible to help in determining what action they should take. The findings did not identify the source of funds nor the programs being charged and therefore will not assist HUD management in deciding on the appropriate action to take.

AOM paragraph 4-2A5a describes the information needed for the Background section of the report. The Background section normally will not discuss the content of the findings. However, the discussion draft did include in, the Background section, information about the finding on the payment to Mr. Marchman in violation of the Louisiana Ethics Law, and on the discrepancies in the procurement process. Similarly, AOM paragraph 4-2A5b describes the information needed for the Scope and Methodology section of the report. The Scope and Methodology section normally will not discuss the content of the findings. However, the discussion draft did include in the Objective and Scope section information about the content of the six audit findings.

Policies and Procedures:

AOM paragraph 1-5 discusses the inter-office communications and coordination needed between OIG offices in both Headquarters and the Regions. The AOM recognizes that auditors may need the advice of IG Counsel. For this assignment the region should have consulted IG Counsel for clarification of numerous requirements on a for-profit entity because the contractual provisions were not clear. The region used OMB A-87 as the criterion and as IG Counsel explained this criterion is not for a for-profit entity and Federal Acquisition Regulations apply. The region interpreted the contractual provision as not permitting CVR to substitute personnel but IG Counsel disagrees and states the region will not prevail in this argument. The region interpreted the contract provision as not allowing CVR to charge for certain expenses but IG Counsel states that the evidence does not present a strong breach theory although an alternative approach is possible. The region expended a significant amount of audit resources that could have been avoided if IG Counsel's advice had been obtained early in the audit.

Cc: William Nixon/FTW/HUDOIG@HUDOIG; Danita Wade/FTW/HUDOIG@HUDOIG;
Lynelle Kunst/FTW/HUDOIG@HUDOIG; Donna Hawkins/WAS/HUDOIG@HUDOIG
Subject: Re: CVR



**James Heist/WHQ/HUDOIG**
09/15/2004 03:24 PM

To  D Beard/FTW/HUDOIG@HUDOIG

cc  OIG TOP Review/WHQ/HUDOIG@HUDOIG

Subject  Fw: CVR

Please restructure the report and revise as suggested. Return the revised draft for review.

See comments below.

In addition to Roger's and Stan's comments, the background and scope sections have finding information that does not belong in those sections.
Would you please circle what you see and fax those pages to me, Thanks.

We will keep you posted on any comments from Saddler.

Jim

—— Forwarded by James Heist/WHQ/HUDOIG on 09/15/2004 04:15 PM ——

**Stanley McLeod/WHQ/HUDOIG**
09/15/2004 02:22 PM

To  jheist@hudoig.gov

cc

Subject  Fw: CVR

pass our comments to Beard.  We are asking some additional questions of Bryan which may have further impact.

Stanley -- Questions to, and answers from, Mr. Saddler need to be in the workpapers.  Would you please include us in the discussions.

Sept. 15 E-Mail

—— Forwarded by Stanley McLeod/WHQ/HUDOIG on 09/15/2004 02:18 PM ——

**Roger Niesen/WHQ/HUDOIG**
09/15/2004 02:11 PM

To  Stanley McLeod/WHQ/HUDOIG@HUDOIG

cc  John Grygrowski/WHQ/HUDOIG@HUDOIG

Subject  CVR

Stan, TOP has reviewed the subject draft audit report and has the following comments.  We will need to

see this one again.

[attachment "CVR Draft 9-7-04 (Reg 6).pdf" deleted by D Beard/FTW/HUDOIG]

This report needs some major rework and may be better structured in two findings.

I disagree that it may be better structured into two findings. It is fine as it is. This is a request audit from Carmen Valenti. He is hoping we can give him a strong platform that he can use to justify appropriate sanctions. The reports six finding headlines provide that platform and allow a reader to skim through six separate instances of questionable behavior. We are attempting to make a customer happy. Thus, I would prefer not to expend the serious effort needed to rework this for cosmetic purposes. Also, one item that is missing is that these are two different contracts and in some instances the cause differs. The duplicates is written the way it is because of the possibility of fraud as opposed to compliance with OMB Circular.

As suggested by Mr. Heist, I would like to run this by Carmen before we proceed

1.    The Housing Authority of New Orleans was not properly managed.
   •    Did not follow procurement regulations
   •    Did not properly oversee its contracts
   •    Inappropriately steered contracts
   •    Permitted conflicts of interest to exist

2.    CVR overcharged for ineligible and inappropriate expenses.
   •    CVR inappropriately charged over $1.1 million
   •    CVR charged for duplicate and ineligible expenses
   •    Inappropriate subsidized expenses

•    Finding 1 should address all the Authority's weaknesses, independent of CVR. It should discuss who was in control and responsible. The impact is the amount of inappropriate charges that have occurred through lack of oversight etc. Recommendations should be for repayments as appropriate from non federal funds and appropriate administrative actions against the persons responsible as identified by position in the report.

•    Finding 2 should address CVR's liberty's it took, emphasizing those instances where information was hidden to prevent detection by the Housing Authority, and those billings etc. that were in clear violation of the contract. This finding should not reiterate all the faults of the Housing Authority's loose controls, but concentrate what CVR did that is wrong. Recommendations would be for recoupment of funds and debarment of principles if the case can

be shown that this was intentional and not poor record keeping.

• There are dozens of flagrant expressions and words that need to be removed. To the cold reader it appears that the auditor has a bias against the auditee. The audit should stick to the facts and let the reader draw the conclusions.

We cannot locate any flagrant expressions that need to be removed, nor do we concur there is any appearance of bias -- all the field auditors have signed independence statements. This audit does stick to the facts and does draw appropriate conclusions -- please identify which statements are not facts and which conclusions you would like us to remove.

• All findings and conditions need to be supported with criteria that will convince the cold reader that a required regulation or procedure has been violated. The evidence cannot be audit conjecture that these are bad guys, it must be direct.

Please identify what findings and conditions are not supported with criteria and where we have used conjecture that these are bad guys.

• Referrals can be made to the IRS and the State of LA but they do not need to be addressed in this report.

Disagree. Violations of IRS and State laws and regulations are fair game for this report. If not addressed here, then where?

• Expressions that are unsure like, "it appears" either need to be determined or removed.

Please identify which "it appears" and other unsure expressions you would like us to remove.

There are comments in this report about CVR's dealings with Puerto Rico HA. These are tangential to the topic at hand and should be removed.

Disagree. This is evidence of a repeat finding and should appear in the report (GAS 7.29). It also aids HUD's case for debarment since it shows a history.



U.S. DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT

## Office of Inspector General

451 7th St., S.W.

WASHINGTON, D.C. 20410-4500

DEC 17 2004

MEMORANDUM FOR: D. Michael Beard, Regional Inspector General for Audit, 6AGA

FROM: James A. Heist, Assistant Inspector General for Audit, GA

SUBJECT: Housing Authority of New Orleans Contracts With CVR Associates, Inc. New Orleans, LA

As noted in my email to you dated October 27, 2004, I directed TOP to review this assignment. Attached is their report on this review. It is evident that the report as presently drafted cannot be issued. We found problems with inadequate finding support, the use of inappropriate criteria and non-compliance with several elements of the Audit Operations Manual and Government Auditing Standards. We carefully examined the support for each of your draft report recommendations. Many of the contract problems squarely rest with HANO and you performed insufficient work at HANO to make recommendations for corrective actions.

TOP concluded and I concur that there is no need for a formal audit report, and that the one remaining matter can be covered in two pieces of correspondence signed by you.

Prepare a letter to the Louisiana State Ethics Board regarding the ethical violation of Kevin Marchman in accepting a $20,000 payment from CVR Associates. Provide detail to the Board of your audit evidence, how you obtained such evidence and request a periodic report on the status of the referral.

Prepare a memorandum to the Assistant Secretary of Public and Indian Housing to inform him of the letter to the Louisiana State Ethics Board.

I believe we can accomplish our primary reporting mission through this correspondence. Please submit this correspondence for TOP review within the next two weeks.

Attachment

Technical Oversight and Planning Division
Report on Review of Draft Audit Report
Housing Authority of New Orleans (HANO)
Contracts with CVR Associates Inc.

We provided comments on the initial draft report and referred the report to IG Counsel to answer several specific questions on contractual matters. Moreover, one of Counsel's attorneys visited Ft. Worth and discussed the report with Region 6 staff. Region 6 had our initial comments and Counsel's comments for consideration in preparing the most current draft. The revised discussion draft did not contain sufficient evidence to justify the six findings and associated recommendations as discussed in the following paragraphs.

Findings and Recommendations:

*Region 6 recommends in 1A that HUD direct the HA to initiate legal action to seek recovery of the $145,625 for the out of scope work CVR initiated.*

On page 11, the discussion draft explains that the HA amended the contract to retroactively include the out of scope work. Region 6's evidence did not demonstrate that the Assistant Secretary for PIH in his capacity as acting Board for HANO did not approve the disbursement to CVR for $145,625. Consequently, the audit evidence is insufficient to justify recovery of the $145,625.

*Region 6 recommends in 1B that HUD direct the HA to repay the $444,042 it inappropriately paid after the contract expired.*

Region 6's report did not provide any evidence that the services were actually performed after August 12, 1999 as opposed to the billings just being late. Further, the discussion draft states that extending the contract beyond 2 years would have required approval from HUD. Region 6's evidence did not demonstrate that the Assistant Secretary for PIH in his capacity as acting Board for HANO did not approve both the contract extension and each individual disbursement. Consequently, the audit evidence is insufficient to justify recovery of the $444,042.

*Region 6 recommends in 1C that HUD take appropriate sanctions against CVR Associates, Inc and its principals.*

This recommendation was based on the first two recommendations that are not supported.

*Region 6 recommends in 1D that HUD take appropriate administrative sanctions against former Authority administrators for actions taken in the administration of this contract.*

As discussed above, Region 6 did not demonstrate that the HA actions were never authorized.

*Region 6 recommends in 2A that HUD direct the HA to initiate legal action to seek recovery of the $1,088,898 CVR overcharged for individual subcontractors and recommendation 2B is to initiate legal action to recover the $68,345 CVR overcharged for third-party invoices.*

IG Counsel advised in their memorandum that they would be glad to examine a revised draft to assess whether a basis for action against CVR exists under the FAR. Region 6's revised discussion draft did not change. The revised draft does not present the evidence to demonstrate that CVR violated the criteria in FAR as requested by IG Legal Counsel.

*Region 6 recommends in 2C that HUD take appropriate administrative sanctions against CVR Associates, Inc and its principals and 2D recommends appropriate administrative sanctions against former Authority administrators.*

The revised discussion draft did not contain the evidence as requested by IG Counsel, in their memorandum, to demonstrate that CVR principals and former HA administrators violated the FAR and are subject to administrative sanctions.

*Region 6 recommends in 2E in the initial discussion draft that HUD should refer to the IRS for resolution of whether CVR misclassified employees as independent contractors.*

IG Counsel advised in their memorandum that until evidence presented in the draft report demonstrates that such misclassifications (of subcontractors) falls within the OIG's authority, there is no pressing reason to consult the IRS on this issue other than to foster comity between agencies. The revised draft report contained the same evidence and recommendation as the report reviewed by IG Counsel.

*Region 6 recommends that HUD direct the HA to initiate legal action to seek recovery of duplicate billings in 3A the amount of $18,902 for subcontractor Casterline & Associates, in 3B the amount of $6,116 in the initial discussion draft and increased to $7,206 in the revised draft for other items, and in 3C the amount of $22,500 for expenses related to another contract.*

On page 25 of the draft report, footnote 30, it states due to the numerous invoices, personnel, independent subcontractors, accounts, poor recording keeping by CVR, it is undeterminable whether all such duplicate costs were detected. Conversely, CVR's poor recording keeping may not disclose the HA repayments or offsets for duplicate billings. Region 6's audit work did not check HA records for recovery or offset at a later date.

*Region 6 recommends in 3D that HUD direct the HA to initiate legal action to seek recovery of the $26,421 for amounts CVR over billed and for questioned travel airfare upgrades, tips, and other ineligible and abusive charges.*



IG Counsel advised in their memorandum that finding 3 mistakenly analyzes CVR's travel costs using A-87. IG Counsel stated that A-87 does not apply to CVR because it is a for-profit entity and CVR's costs must be analyzed under FAR. The revised draft increased the questioned amount to $36,738 but did not delete the reference to A-87 and did not demonstrate that the FAR was violated.

*Region 6 recommends in 3E that HUD take appropriate sanctions against CVR Associates, Inc and its principals.*

We do not agree that a debarment action is appropriate because the dollar amounts in this finding are minor.

*Region 6 recommends that HUD direct the HA to initiate legal action to seek recovery in 4A of $22,107 for off-site office space, in 4B of $20,208 for telephone expenses, in 4C of $36,215 for clerical support, and in 4D to initiate administrative sanctions against CVR principals.*

The initial draft contained finding 4 captioned as the Authority inappropriately subsidized CVR business expenses. IG Counsel reviewed the criteria for the finding and stated that the finding did not offer a strong basis for action regarding inappropriate charges. IG Counsel recommended that subsequent drafts explore an alternative theory that CVR's expenses are unrelated to its contractual duties and offered to evaluate the legal sufficiency of this theory at that time. The 10-27-04 draft revised the criteria for finding 4 modified on page 33 in one paragraph and contained the same recommendation with the exception of increasing the amount questioned by a minor amount. The discussion draft changes do not provide sufficient evidence that CVR expenses are unrelated to the contractual duties.

*Region 6 recommends in 5A that HUD direct the HA to repay its program $131,840.*

The Assistant Secretary for Public and Indian Housing, also fulfilling the dual responsibility as the Board of HANO, approved the contract and authorized the disbursement of $131,840. The draft report inappropriately recommends that HUD undo what it previously authorized.

*Region 6 recommends in 5B that HUD take appropriate administrative sanctions against former Authority administrators.*

The HA former administrators were performing their duties as directed by HUD and in accordance with the provision of the Cooperative Endeavor Agreement.

*Region 6 recommends in 6A that HUD refer the apparent conflicts of interests to the state Ethics Panel for resolution.*

IG Counsel stated that finding number 6 should be pared down significantly. Specifically, the irrelevant points that do not bear upon the finding include, but are not limited to, CVR enjoyment of a decade long relationship, HANO's counsel advise on the ban, and whether HUD exonerated Mr. Marchman of federal ethics violation in footnote 54.

The finding was not pared down significantly and the irrelevant points remain. The footnote reference was deleted but the other two references remain.

This issue can be addressed in a letter to the State recommending action against Mr. Marchman. IG can take this action without obtaining HUD approval or requesting HUD to take the action. You should notify the Assistant Secretary for Public and Indian Housing that the memo has been sent and its contents.

*Region 6 recommends in 6B that HUD take appropriate administrative action against CVR Associates Inc. and its principals.*

The draft report does not provide sufficient specific evidence against CVR principals or the names of the principals to justify the debarment action.

*Region 6 recommends in 6C that HUD take appropriate administrative action against Mr. Marchman and Ms. Hill.*

Region 6 has already prepared a referral on Ms. Hill and that should be sufficient to address this problem. With respect to Mr. Marchman we have discussed this with Counsel. We know that the contract schedules should have been attached and maintained, but whether failure to do so constitutes an offense indicating a lack of business integrity seems highly suspect. Incompetence, perhaps, but probably not a lack of integrity. Unless someone prosecutes Marchman successfully -- and for misdeeds in connection with maintaining the contract documents, not for taking CVR money within the 2-year post-employment ban -- this debarment theory does not meet the criteria for a debarment action as set fort in applicable regulations.

IG Audit Operations Manual and
Government Auditing Standards:

Audit Operations Manual (AOM) paragraph 4-2A5(3) states that auditors must describe in narrative what items are selected, the selection process limitations if any and resulting conclusions in the Objective, Scope, and Methodology paragraph. For the most part this was accomplished. However, in footnote 35 the draft report states we performed limited testing to determine if CVR may have charged the Authority for work performed for other housing authorities or charged more than one housing authority for the same expenses. The results were inconclusive and further work was not performed due to time constraints. The revised discussion draft did not disclose the limitation on time in the Objective, Scope and Methodology paragraph.

AOM paragraph 3-16A3 states that findings must be fully and objectively developed and presented in an unbiased manner. Further, the Government Auditing Standards paragraph 8.46 states objectivity requires that the presentation of the entire report be balanced in content and tone. The Government Auditing Standards, paragraph 8.47 elaborates to state that tone should be balanced by requiring that reports present sound and logical evidence to support conclusions while refraining from using adjectives or adverbs that characterize evidence in a way that implies criticism or unsupported conclusions. We informed Region 6 in commentary on the initial draft that biased terms were noted and should be deleted. The revised report contains the same biased words. The lists of biased words and or phrases are on the following table.

| Page/Paragraph | Biased Word/Phrase | Page/Paragraph | Biased Word/Phrase |
|---|---|---|---|
| iii/1st | Permeated | 33/1st | Hid |
| iii/1st | Notoriously | 33/4th | Frugal |
| iii/1st | reap windfall profits | 34/2nd | Extravagance |
| iii/2nd | Harmed | 34/1st | Extravagance |
| 1/1st | Ineptitude | 34/2nd | Appears |
| 1/2nd | Founder | 34/3rd | wasteful spending |
| 4/1st | Steer business | 34/4th | Extravagant |
| 4/2nd | Apparent | 35/1st | Buried |
| 4/2nd | Permeated | 35/1st | Appears |
| 7/1st | Notoriously | 35/4th | Appear |
| 7/1st | exploit flaws | 36/1st | Pervade |
| 7/1st | unduly enriching | 37/1st | Concealed |
| 9/3rd | exploit the Authority | 36/caption | Exploited |
| 9/4th | Windfall profits | 39/title | Steered |
| 11/1st | free rein | 39/1st | Appears |
| 12/2nd | Conjured up | 39/1st | Steer business |
| 12/3rd | poor management acumen | 39/1st | Apparently futile effort |
| 13/1st | Flawed | 39/3rd | Futile |
| 13/1st | cannot take advantage | 42/3rd | Double dipping |
| 15/1st | CVR implied | 44/caption | Sloppy |
| 15/1st | CVR may have violated | 44/5th | Defiance |
| 18/2nd | bait and switch | 45/5th | Suggested |
| 18/4th | Fledgling | 49/title | Permeated |
| 18/4th | Miniscule | 49/1st | May |
| 19/4th | bottom line | 49/1st | Appear |
| 20/1st | Windfall | 49/1st | Apparent |
| 23/Title | Abusive | 49/caption | May have |
| 23/1st | Abusive | 49/2nd | May have |
| 24/1st | Sloppy | 51/caption | Apparent |
| 24/1st | Inept | 51/4th | Appears |
| 25/title | Sloppy | 51/3rd | Apparent |
| 26/2nd | Benign | 52/1st | Apparent |
| 26/2nd | Indulgences | 52/2nd | Ms. Hill's boyfriend |
| 26/2nd | Abusive | 53/1st | Ms. Hill's boyfriend |
| 27/3rd | Appeared | 53/1st | Cavalier |
| 30/2nd | Well-paid | 53/2nd | Boyfriend |
| 30/2nd | Exploit | 53/2nd | May have |
| 30/title | Haphazardly | 59/1st | May not |
| 31/1st | Apparently | 59/4th | Believe |

Government Auditing Standards describe the elements for a quality report including being complete and concise. In paragraph 8.41 the Government Auditing Standards require that the report contain all evidence needed to satisfy the audit objectives and promote an adequate and correct understanding of the matters reported. Paragraph 8.53 requires that the report be no longer than necessary to convey and support the message. It states further that extraneous detail detracts from a report and may even conceal the real message and may confuse or distract the user.

The revised discussion draft does not comply with the standards for being complete and concise. In the draft report's Background section on page 1 in the first paragraph the discussion draft states "HUD allowed the Authority to manipulate itself off the troubled list through the use of self-certified performance scores". In the Background section beginning on page 3, the discussion draft states that the Authority awarded three contracts to CVR including the contract for technical assistance for $2,778,240 and on page 4 the discussion draft discusses the technical assistance contract in detail. The discussion about the troubled list and technical assistance contract is extraneous detail because the discussion draft did not demonstrate its relevance to the audit objectives.

AOM paragraph 3-17c2 states that auditors must provide HUD management with as much information as possible to help in determining what action they should take. The findings did not identify the source of funds nor the programs being charged and therefore will not assist HUD management in deciding on the appropriate action to take.

AOM paragraph 4-2A5a describes the information needed for the Background section of the report. The Background section normally will not discuss the content of the findings. However, the discussion draft did include in, the Background section, information about the finding on the payment to Mr. Marchman in violation of the Louisiana Ethics Law, and on the discrepancies in the procurement process. Similarly, AOM paragraph 4-2A5b describes the information needed for the Scope and Methodology section of the report. The Scope and Methodology section normally will not discuss the content of the findings. However, the discussion draft did include in the Objective and Scope section information about the content of the six audit findings.

## Policies and Procedures:

AOM paragraph 1-5 discusses the inter-office communications and coordination needed between OIG offices in both Headquarters and the Regions. The AOM recognizes that auditors may need the advice of IG Counsel. For this assignment the region should have consulted IG Counsel for clarification of numerous requirements on a for-profit entity because the contractual provisions were not clear. The region used OMB A-87 as the criterion and as IG Counsel explained this criterion is not for a for-profit entity and Federal Acquisition Regulations apply. The region interpreted the contractual provision as not permitting CVR to substitute personnel but IG Counsel disagrees and states the region will not prevail in this argument. The region interpreted the contract provision as not allowing CVR to charge for certain expenses but IG Counsel states that the evidence does not present a strong breach theory although an alternative approach is possible. The region expended a significant amount of audit resources that could have been avoided if IG Counsel's advice had been obtained early in the audit.

Cc: William Nixon/FTW/HUDOIG@HUDOIG; Danita Wade/FTW/HUDOIG@HUDOIG;
Lynelle Kunst/FTW/HUDOIG@HUDOIG; Donna Hawkins/WAS/HUDOIG@HUDOIG
Subject: Re: CVR



**James Heist/WHQ/HUDOIG**
09/15/2004 03:24 PM

To  D Beard/FTW/HUDOIG@HUDOIG
cc  OIG TOP Review/WHQ/HUDOIG@HUDOIG
Subject  Fw: CVR

Please restructure the report and revise as suggested. Return the revised draft for review.

**See comments below.**

In addition to Roger's and Stan's comments, the background and scope sections have finding information that does not belong in those sections.
**Would you please circle what you see and fax those pages to me, Thanks.**

We will keep you posted on any comments from Saddler.

Jim

—— Forwarded by James Heist/WHQ/HUDOIG on 09/15/2004 04:15 PM ——

**Stanley McLeod/WHQ/HUDOIG**
09/15/2004 02:22 PM

To  jheist@hudoig.gov
cc
Subject  Fw: CVR

pass our comments to Beard. We are asking some additional questions of Bryan which may have further impact.

**Stanley -- Questions to, and answers from, Mr. Saddler need to be in the workpapers. Would you please include us in the discussions.**

*Sept. 15 E-Mail*

—— Forwarded by Stanley McLeod/WHQ/HUDOIG on 09/15/2004 02:18 PM ——

**Roger Niesen/WHQ/HUDOIG**
09/15/2004 02:11 PM

To  Stanley McLeod/WHQ/HUDOIG@HUDOIG
cc  John Grygrowski/WHQ/HUDOIG@HUDOIG
Subject  CVR

Stan, TOP has reviewed the subject draft audit report and has the following comments. We will need to

see this one again.

[attachment "CVR Draft 9-7-04 (Reg 6).pdf" deleted by D Beard/FTW/HUDOIG]

This report needs some major rework and may be better structured in two findings.

I disagree that it may be better structured into two findings. It is fine as it is. This is a request audit from Carmen Valenti. He is hoping we can give him a strong platform that he can use to justify appropriate sanctions. The reports six finding headlines provide that platform and allow a reader to skim through six separate instances of questionable behavior. We are attempting to make a customer happy. Thus, I would prefer not to expend the serious effort needed to rework this for cosmetic purposes. Also, one item that is missing is that these are two different contracts and in some instances the cause differs. The duplicates is written the way it is because of the possibility of fraud as opposed to compliance with OMB Circular.

As suggested by Mr. Heist, I would like to run this by Carmen before we proceed

1.    The Housing Authority of New Orleans was not properly managed.
    • Did not follow procurement regulations
    • Did not properly oversee its contracts
    • Inappropriately steered contracts
    • Permitted conflicts of interest to exist

2.    CVR overcharged for ineligible and inappropriate expenses.
    • CVR inappropriately charged over $1.1 million
    • CVR charged for duplicate and ineligible expenses
    • Inappropriate subsidized expenses

•    Finding 1 should address all the Authority's weaknesses, independent of CVR. It should discuss who was in control and responsible. The impact is the amount of inappropriate charges that have occurred through lack of oversight etc. Recommendations should be for repayments as appropriate from non federal funds and appropriate administrative actions against the persons responsible as identified by position in the report.

•    Finding 2 should address CVR's liberty's it took, emphasizing those instances where information was hidden to prevent detection by the Housing Authority, and those billings etc. that were in clear violation of the contract. This finding should not reiterate all the faults of the Housing Authority's loose controls, but concentrate what CVR did that is wrong. Recommendations would be for recoupment of funds and debarment of principles if the case can

be shown that this was intentional and not poor record keeping.

- There are dozens of flagrant expressions and words that need to be removed. To the cold reader it appears that the auditor has a bias against the auditee. The audit should stick to the facts and let the reader draw the conclusions.

We cannot locate any flagrant expressions that need to be removed, nor do we concur there is any appearance of bias -- all the field auditors have signed independence statements. This audit does stick to the facts and does draw appropriate conclusions -- please identify which statements are not facts and which conclusions you would like us to remove.

- All findings and conditions need to be supported with criteria that will convince the cold reader that a required regulation or procedure has been violated. The evidence cannot be audit conjecture that these are bad guys, it must be direct.

Please identify what findings and conditions are not supported with criteria and where we have used conjecture that these are bad guys.

- Referrals can be made to the IRS and the State of LA but they do not need to be addressed in this report.

Disagree. Violations of IRS and State laws and regulations are fair game for this report. If not addressed here, then where?

- Expressions that are unsure like, "it appears" either need to be determined or removed.

Please identify which "it appears" and other unsure expressions you would like us to remove.

There are comments in this report about CVR's dealings with Puerto Rico HA. These are tangential to the topic at hand and should be removed.

Disagree. This is evidence of a repeat finding and should appear in the report (GAS 7.29). It also aids HUD's case for debarment since it shows a history.



U.S. DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT
## Office of Inspector General
451 7th St., S.W.
WASHINGTON, D.C. 20410-4500

DEC 17 2004

MEMORANDUM FOR:  D. Michael Beard, Regional Inspector General for Audit, 6AGA

FROM:  James A. Heist, Assistant Inspector General for Audit, GA

SUBJECT:  Housing Authority of New Orleans Contracts With CVR Associates, Inc. New Orleans, LA

As noted in my email to you dated October 27, 2004, I directed TOP to review this assignment. Attached is their report on this review. It is evident that the report as presently drafted cannot be issued. We found problems with inadequate finding support, the use of inappropriate criteria and non-compliance with several elements of the Audit Operations Manual and Government Auditing Standards. We carefully examined the support for each of your draft report recommendations. Many of the contract problems squarely rest with HANO and you performed insufficient work at HANO to make recommendations for corrective actions.

TOP concluded and I concur that there is no need for a formal audit report, and that the one remaining matter can be covered in two pieces of correspondence signed by you.

Prepare a letter to the Louisiana State Ethics Board regarding the ethical violation of Kevin Marchman in accepting a $20,000 payment from CVR Associates. Provide detail to the Board of your audit evidence, how you obtained such evidence and request a periodic report on the status of the referral.

Prepare a memorandum to the Assistant Secretary of Public and Indian Housing to inform him of the letter to the Louisiana State Ethics Board.

I believe we can accomplish our primary reporting mission through this correspondence. Please submit this correspondence for TOP review within the next two weeks.

Attachment

Technical Oversight and Planning Division
Report on Review of Draft Audit Report
Housing Authority of New Orleans (HANO)
Contracts with CVR Associates Inc.

We provided comments on the initial draft report and referred the report to IG Counsel to answer several specific questions on contractual matters. Moreover, one of Counsel's attorneys visited Ft. Worth and discussed the report with Region 6 staff. Region 6 had our initial comments and Counsel's comments for consideration in preparing the most current draft. The revised discussion draft did not contain sufficient evidence to justify the six findings and associated recommendations as discussed in the following paragraphs.

Findings and Recommendations:

*Region 6 recommends in 1A that HUD direct the HA to initiate legal action to seek recovery of the $145,625 for the out of scope work CVR initiated.*

On page 11, the discussion draft explains that the HA amended the contract to retroactively include the out of scope work. Region 6's evidence did not demonstrate that the Assistant Secretary for PIH in his capacity as acting Board for HANO did not approve the disbursement to CVR for $145,625. Consequently, the audit evidence is insufficient to justify recovery of the $145,625.

*Region 6 recommends in 1B that HUD direct the HA to repay the $444,042 it inappropriately paid after the contract expired.*

Region 6's report did not provide any evidence that the services were actually performed after August 12, 1999 as opposed to the billings just being late. Further, the discussion draft states that extending the contract beyond 2 years would have required approval from HUD. Region 6's evidence did not demonstrate that the Assistant Secretary for PIH in his capacity as acting Board for HANO did not approve both the contract extension and each individual disbursement. Consequently, the audit evidence is insufficient to justify recovery of the $444,042.

*Region 6 recommends in 1C that HUD take appropriate sanctions against CVR Associates, Inc and its principals.*

This recommendation was based on the first two recommendations that are not supported.

*Region 6 recommends in 1D that HUD take appropriate administrative sanctions against former Authority administrators for actions taken in the administration of this contract.*

As discussed above, Region 6 did not demonstrate that the HA actions were never authorized.

*Region 6 recommends in 2A that HUD direct the HA to initiate legal action to seek recovery of the $1,088,898 CVR overcharged for individual subcontractors and recommendation 2B is to initiate legal action to recover the $68,345 CVR overcharged for third-party invoices.*

IG Counsel advised in their memorandum that they would be glad to examine a revised draft to assess whether a basis for action against CVR exists under the FAR. Region 6's revised discussion draft did not change. The revised draft does not present the evidence to demonstrate that CVR violated the criteria in FAR as requested by IG Legal Counsel.

*Region 6 recommends in 2C that HUD take appropriate administrative sanctions against CVR Associates, Inc and its principals and 2D recommends appropriate administrative sanctions against former Authority administrators.*

The revised discussion draft did not contain the evidence as requested by IG Counsel, in their memorandum, to demonstrate that CVR principals and former HA administrators violated the FAR and are subject to administrative sanctions.

*Region 6 recommends in 2E in the initial discussion draft that HUD should refer to the IRS for resolution of whether CVR misclassified employees as independent contractors.*

IG Counsel advised in their memorandum that until evidence presented in the draft report demonstrates that such misclassifications (of subcontractors) falls within the OIG's authority, there is no pressing reason to consult the IRS on this issue other than to foster comity between agencies. The revised draft report contained the same evidence and recommendation as the report reviewed by IG Counsel.

*Region 6 recommends that HUD direct the HA to initiate legal action to seek recovery of duplicate billings in 3A the amount of $18,902 for subcontractor Casterline & Associates, in 3B the amount of $6,116 in the initial discussion draft and increased to $7,206 in the revised draft for other items, and in 3C the amount of $22,500 for expenses related to another contract.*

On page 25 of the draft report,  footnote 30, it states due to the numerous invoices, personnel, independent subcontractors, accounts, poor recording keeping by CVR, it is undeterminable whether all such duplicate costs were detected.  Conversely, CVR's poor recording keeping may not disclose the HA repayments or offsets for duplicate billings. Region 6's audit work did not check HA records for recovery or offset at a later date.

*Region 6 recommends in 3D that HUD direct the HA to initiate legal action to seek recovery of the $26,421 for amounts CVR over billed and for questioned travel airfare upgrades, tips, and other ineligible and abusive charges.*



IG Counsel advised in their memorandum that finding 3 mistakenly analyzes CVR's travel costs using A-87.  IG Counsel stated that A-87 does not apply to CVR because it is a for-profit entity and CVR's costs must be analyzed under FAR.  The revised draft increased the questioned amount to $36,738 but did not delete the reference to A-87 and did not demonstrate that the FAR was violated.

*Region 6 recommends in 3E that HUD take appropriate sanctions against CVR Associates, Inc and its principals.*

We do not agree that a debarment action is appropriate because the dollar amounts in this finding are minor.

*Region 6 recommends that HUD direct the HA to initiate legal action to seek recovery in 4A of $22,107 for off-site office space, in 4B of $20,208 for telephone expenses, in 4C of $36,215 for clerical support, and in 4D to initiate administrative sanctions against CVR principals.*

The initial draft contained finding 4 captioned as the Authority inappropriately subsidized CVR business expenses. IG Counsel reviewed the criteria for the finding and stated that the finding did not offer a strong basis for action regarding inappropriate charges. IG Counsel recommended that subsequent drafts explore an alternative theory that CVR's expenses are unrelated to its contractual duties and offered to evaluate the legal sufficiency of this theory at that time. The 10-27-04 draft revised the criteria for finding 4 modified on page 33 in one paragraph and contained the same recommendation with the exception of increasing the amount questioned by a minor amount. The discussion draft changes do not provide sufficient evidence that CVR expenses are unrelated to the contractual duties.

*Region 6 recommends in 5A that HUD direct the HA to repay its program $131,840.*

The Assistant Secretary for Public and Indian Housing, also fulfilling the dual responsibility as the Board of HANO, approved the contract and authorized the disbursement of $131,840. The draft report inappropriately recommends that HUD undo what it previously authorized.

*Region 6 recommends in 5B that HUD take appropriate administrative sanctions against former Authority administrators.*

The HA former administrators were performing their duties as directed by HUD and in accordance with the provision of the Cooperative Endeavor Agreement.

*Region 6 recommends in 6A that HUD refer the apparent conflicts of interests to the state Ethics Panel for resolution.*

IG Counsel stated that finding number 6 should be pared down significantly. Specifically, the irrelevant points that do not bear upon the finding include, but are not limited to, CVR enjoyment of a decade long relationship, HANO's counsel advise on the ban, and whether HUD exonerated Mr. Marchman of federal ethics violation in footnote 54.

The finding was not pared down significantly and the irrelevant points remain. The footnote reference was deleted but the other two references remain.

This issue can be addressed in a letter to the State recommending action against Mr. Marchman. IG can take this action without obtaining HUD approval or requesting HUD to take the action. You should notify the Assistant Secretary for Public and Indian Housing that the memo has been sent and its contents.

*Region 6 recommends in 6B that HUD take appropriate administrative action against CVR Associates Inc. and its principals.*

The draft report does not provide sufficient specific evidence against CVR principals or the names of the principals to justify the debarment action.

*Region 6 recommends in 6C that HUD take appropriate administrative action against Mr. Marchman and Ms. Hill.*

Region 6 has already prepared a referral on Ms. Hill and that should be sufficient to address this problem. With respect to Mr. Marchman we have discussed this with Counsel. We know that the contract schedules should have been attached and maintained, but whether failure to do so constitutes an offense indicating a lack of business integrity seems highly suspect. Incompetence, perhaps, but probably not a lack of integrity. Unless someone prosecutes Marchman successfully -- and for misdeeds in connection with maintaining the contract documents, not for taking CVR money within the 2-year post-employment ban -- this debarment theory does not meet the criteria for a debarment action as set fort in applicable regulations.

### IG Audit Operations Manual and Government Auditing Standards:

Audit Operations Manual (AOM) paragraph 4-2A5(3) states that auditors must describe in narrative what items are selected, the selection process limitations if any and resulting conclusions in the Objective, Scope, and Methodology paragraph. For the most part this was accomplished. However, in footnote 35 the draft report states we performed limited testing to determine if CVR may have charged the Authority for work performed for other housing authorities or charged more than one housing authority for the same expenses. The results were inconclusive and further work was not performed due to time constraints. The revised discussion draft did not disclose the limitation on time in the Objective, Scope and Methodology paragraph.

AOM paragraph 3-16A3 states that findings must be fully and objectively developed and presented in an unbiased manner. Further, the Government Auditing Standards paragraph 8.46 states objectivity requires that the presentation of the entire report be balanced in content and tone. The Government Auditing Standards, paragraph 8.47 elaborates to state that tone should be balanced by requiring that reports present sound and logical evidence to support conclusions while refraining from using adjectives or adverbs that characterize evidence in a way that implies criticism or unsupported conclusions. We informed Region 6 in commentary on the initial draft that biased terms were noted and should be deleted. The revised report contains the same biased words. The lists of biased words and or phrases are on the following table.

| Page/Paragraph | Phrase/Word Phrase | Page/Paragraph | Phrase/Word Phrase |
|---|---|---|---|
| iii/1st | Permeated | 33/1st | Hid |
| iii/1st | Notoriously | 33/4th | Frugal |
| iii/1st | reap windfall profits | 34/2nd | Extravagance |
| iii/2nd | Harmed | 34/1st | Extravagance |
| 1/1st | Ineptitude | 34/2nd | Appears |
| 1/2nd | Founder | 34/3rd | wasteful spending |
| 4/1st | Steer business | 34/4th | Extravagant |
| 4/2nd | Apparent | 35/1st | Buried |
| 4/2nd | Permeated | 35/1st | Appears |
| 7/1st | Notoriously | 35/4th | Appear |
| 7/1st | exploit flaws | 36/1st | Pervade |
| 7/1st | unduly enriching | 37/1st | Concealed |
| 9/3rd | exploit the Authority | 36/caption | Exploited |
| 9/4th | Windfall profits | 39/title | Steered |
| 11/1st | free rein | 39/1st | Appears |
| 12/2nd | Conjured up | 39/1st | Steer business |
| 12/3rd | poor management acumen | 39/1st | Apparently futile effort |
| 13/1st | Flawed | 39/3rd | Futile |
| 13/1st | cannot take advantage | 42/3rd | Double dipping |
| 15/1st | CVR implied | 44/caption | Sloppy |
| 15/1st | CVR may have violated | 44/5th | Defiance |
| 18/2nd | bait and switch | 45/5th | Suggested |
| 18/4th | Fledgling | 49/title | Permeated |
| 18/4th | Miniscule | 49/1st | May |
| 19/4th | bottom line | 49/1st | Appear |
| 20/1st | Windfall | 49/1st | Apparent |
| 23/Title | Abusive | 49/caption | May have |
| 23/1st | Abusive | 49/2nd | May have |
| 24/1st | Sloppy | 51/caption | Apparent |
| 24/1st | Inept | 51/4th | Appears |
| 25/title | Sloppy | 51/3rd | Apparent |
| 26/2nd | Benign | 52/1st | Apparent |
| 26/2nd | Indulgences | 52/2nd | Ms. Hill's boyfriend |
| 26/2nd | Abusive | 53/1st | Ms. Hill's boyfriend |
| 27/3rd | Appeared | 53/1st | Cavalier |
| 30/2nd | Well-paid | 53/2nd | Boyfriend |
| 30/2nd | Exploit | 53/2nd | May have |
| 30/title | Haphazardly | 59/1st | May not |
| 31/1st | Apparently | 59/4th | Believe |

Government Auditing Standards describe the elements for a quality report including being complete and concise. In paragraph 8.41 the Government Auditing Standards require that the report contain all evidence needed to satisfy the audit objectives and promote an adequate and correct understanding of the matters reported. Paragraph 8.53 requires that the report be no longer than necessary to convey and support the message. It states further that extraneous detail detracts from a report and may even conceal the real message and may confuse or distract the user.

The revised discussion draft does not comply with the standards for being complete and concise. In the draft report's Background section on page 1 in the first paragraph the discussion draft states "HUD allowed the Authority to manipulate itself off the troubled list through the use of self-certified performance scores". In the Background section beginning on page 3, the discussion draft states that the Authority awarded three contracts to CVR including the contract for technical assistance for $2,778,240 and on page 4 the discussion draft discusses the technical assistance contract in detail. The discussion about the troubled list and technical assistance contract is extraneous detail because the discussion draft did not demonstrate its relevance to the audit objectives.

AOM paragraph 3-17c2 states that auditors must provide HUD management with as much information as possible to help in determining what action they should take. The findings did not identify the source of funds nor the programs being charged and therefore will not assist HUD management in deciding on the appropriate action to take.

AOM paragraph 4-2A5a describes the information needed for the Background section of the report. The Background section normally will not discuss the content of the findings. However, the discussion draft did include in, the Background section, information about the finding on the payment to Mr. Marchman in violation of the Louisiana Ethics Law, and on the discrepancies in the procurement process. Similarly, AOM paragraph 4-2A5b describes the information needed for the Scope and Methodology section of the report. The Scope and Methodology section normally will not discuss the content of the findings. However, the discussion draft did include in the Objective and Scope section information about the content of the six audit findings.

Policies and Procedures:

AOM paragraph 1-5 discusses the inter-office communications and coordination needed between OIG offices in both Headquarters and the Regions. The AOM recognizes that auditors may need the advice of IG Counsel. For this assignment the region should have consulted IG Counsel for clarification of numerous requirements on a for-profit entity because the contractual provisions were not clear. The region used OMB A-87 as the criterion and as IG Counsel explained this criterion is not for a for-profit entity and Federal Acquisition Regulations apply. The region interpreted the contractual provision as not permitting CVR to substitute personnel but IG Counsel disagrees and states the region will not prevail in this argument. The region interpreted the contract provision as not allowing CVR to charge for certain expenses but IG Counsel states that the evidence does not present a strong breach theory although an alternative approach is possible. The region expended a significant amount of audit resources that could have been avoided if IG Counsel's advice had been obtained early in the audit.

EXHIBIT F12

Cc: William Nixon/FTW/HUDOIG@HUDOIG; Danita Wade/FTW/HUDOIG@HUDOIG;
Lynelle Kunst/FTW/HUDOIG@HUDOIG; Donna Hawkins/WAS/HUDOIG@HUDOIG
Subject: Re: CVR



**James Heist/WHQ/HUDOIG**
09/15/2004 03:24 PM

To  D Beard/FTW/HUDOIG@HUDOIG
cc  OIG TOP Review/WHQ/HUDOIG@HUDOIG
Subject  Fw: CVR

Please restructure the report and revise as suggested. Return the revised draft for review.

### See comments below.

In addition to Roger's and Stan's comments, the background and scope sections have finding information that does not belong in those sections.

### Would you please circle what you see and fax those pages to me, Thanks.

We will keep you posted on any comments from Saddler.

Jim

—— Forwarded by James Heist/WHQ/HUDOIG on 09/15/2004 04:15 PM ——

**Stanley McLeod/WHQ/HUDOIG**
09/15/2004 02:22 PM

To  jheist@hudoig.gov
cc
Subject  Fw: CVR

pass our comments to Beard. We are asking some additional questions of Bryan which may have further impact.

### Stanley -- Questions to, and answers from, Mr. Saddler need to be in the workpapers. Would you please include us in the discussions.

Sept. 15 E-Mail

—— Forwarded by Stanley McLeod/WHQ/HUDOIG on 09/15/2004 02:18 PM ——



**Roger Niesen/WHQ/HUDOIG**
09/15/2004 02:11 PM

To  Stanley McLeod/WHQ/HUDOIG@HUDOIG
cc  John Grygrowski/WHQ/HUDOIG@HUDOIG
Subject  CVR

Stan, TOP has reviewed the subject draft audit report and has the following comments. We will need to

see this one again.

[attachment "CVR Draft 9-7-04 (Reg 6).pdf" deleted by D Beard/FTW/HUDOIG]

This report needs some major rework and may be better structured in two findings.

I disagree that it may be better structured into two findings. It is fine as it is. This is a request audit from Carmen Valenti. He is hoping we can give him a strong platform that he can use to justify appropriate sanctions. The reports six finding headlines provide that platform and allow a reader to skim through six separate instances of questionable behavior. We are attempting to make a customer happy. Thus, I would prefer not to expend the serious effort needed to rework this for cosmetic purposes. Also, one item that is missing is that these are two different contracts and in some instances the cause differs. The duplicates is written the way it is because of the possibility of fraud as opposed to compliance with OMB Circular.

As suggested by Mr. Heist, I would like to run this by Carmen before we proceed

1.    The Housing Authority of New Orleans was not properly managed.
   • Did not follow procurement regulations
   • Did not properly oversee its contracts
   • Inappropriately steered contracts
   • Permitted conflicts of interest to exist

2.    CVR overcharged for ineligible and inappropriate expenses.
   • CVR inappropriately charged over $1.1 million
   • CVR charged for duplicate and ineligible expenses
   • Inappropriate subsidized expenses

•    Finding 1 should address all the Authority's weaknesses, independent of CVR. It should discuss who was in control and responsible. The impact is the amount of inappropriate charges that have occurred through lack of oversight etc. Recommendations should be for repayments as appropriate from non federal funds and appropriate administrative actions against the persons responsible as identified by position in the report.

•    Finding 2 should address CVR's liberty's it took, emphasizing those instances where information was hidden to prevent detection by the Housing Authority, and those billings etc. that were in clear violation of the contract. This finding should not reiterate all the faults of the Housing Authority's loose controls, but concentrate what CVR did that is wrong. Recommendations would be for recoupment of funds and debarment of principles if the case can

be shown that this was intentional and not poor record keeping.

• There are dozens of flagrant expressions and words that need to be removed. To the cold reader it appears that the auditor has a bias against the auditee. The audit should stick to the facts and let the reader draw the conclusions.

We cannot locate any flagrant expressions that need to be removed, nor do we concur there is any appearance of bias -- all the field auditors have signed independence statements. This audit does stick to the facts and does draw appropriate conclusions -- please identify which statements are not facts and which conclusions you would like us to remove.

• All findings and conditions need to be supported with criteria that will convince the cold reader that a required regulation or procedure has been violated. The evidence cannot be audit conjecture that these are bad guys, it must be direct.

Please identify what findings and conditions are not supported with criteria and where we have used conjecture that these are bad guys.

• Referrals can be made to the IRS and the State of LA but they do not need to be addressed in this report.

Disagree. Violations of IRS and State laws and regulations are fair game for this report. If not addressed here, then where?

• Expressions that are unsure like, "it appears" either need to be determined or removed.

Please identify which "it appears" and other unsure expressions you would like us to remove.

There are comments in this report about CVR's dealings with Puerto Rico HA. These are tangential to the topic at hand and should be removed.

Disagree. This is evidence of a repeat finding and should appear in the report (GAS 7.29). It also aids HUD's case for debarment since it shows a history.