U.S. Department of Housing and Urban Development
Southwest District Office of Inspector General
819 Taylor Street, Suite 13A09
Fort Worth, Texas 76102

(817) 978-9309  FAX (817) 978-9316
http://www.hud.gov/oig/oigindex.html

March 20, 2002

MEMORANDUM FOR:   Sandra G. Scott
                  Equal Employment Opportunity Specialist

FROM:   D. Michael Beard
        District Inspector General, 6AGA

SUBJECT:   Informal EEO Complaint for Reprisal

In accordance with OIG Manual Chapter 1099, EEO Process for the HUD OIG, I am submitting this as an informal EEO complaint.

Complaint Information:

| | |
|---|---|
| Name: | D. Michael Beard, CPA, CFE, MBA, DABFA |
| Grade: | GS 511-15 |
| Title: | District Inspector General |
| Home: | 4704 Wooded Acres Drive, Arlington, Texas 76016 |
| Office: | 819 Taylor Street, Suite 13A09, Fort Worth, Texas 76102 |
| Home Phone: | 817-446-7935 |
| Office Phone: | 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 |
| Office Fax: | 817-978-9316 |
| Basis: | Continuing reprisals against me for my testimony in *Tighe v. Cuomo*, July 16, 2002 |
| Reprisers: | Bryan Sadler, Counsel to the Inspector General<br>James Heist, Assistant Inspector General for Audit<br>Michael Phelps, Deputy Assistant Inspector General for Audit |

Remedies:
- Written assurance no further meritless actions, criticisms, and harassments occur.
- Withdrawal of Mr. Phelps reprimand to me of February 20, 2002.
- Written apology from Mr. Phelps for giving me the meritless reprimand.
- Written apology from Mr. Phelps to Ms. Faye Sullins for creating the hostile environment causing her to retire from federal service.
- Reimbursement of all my out-of-pocket expenses to defend myself from the reprisals.
- Reflect my accomplishments for the annual rating period ended January 31, 2002.
- Restoration of the supervisory chain in use before April 2001; e.g., my first line supervisor was the Assistant Inspector General for Audit and my second line supervisor was the Deputy Inspector General.


EXHIBIT 19

The most significant act of reprisal is a reprimand that my superior, Michael Phelps, Deputy Assistant Inspector General for Audit, provided to me on February 20, 2002. The reprimand is without merit. Accordingly, I filed a formal grievance in accordance with OIG Manual Chapter 1771, please see Enclosure 1.

The reprimand is retaliation for my required and truthful testimony during deposition on July 16, 2001, in *Tighe v. Cuomo*. Since July 16, 2001, I have been the target of a pattern of harassment and intimidation in an obvious effort to create a hostile work environment and force me to leave the OIG. This reprimand is only the culmination of a series of increasingly harsh and unfounded actions against me following my testimony.

Since coming to HUD in 1989, I have authored over 50 significant audits that identified $68 million in questioned costs. These audits have been featured in numerous nationwide newspapers and periodicals, one was even featured in a book on the Clinton Administration and another the subject of two national TV news programs. I have been an "expert" witness for the United States on several occasions in both civil and criminal court and I have testified at five congressional hearings. In the last 10 years as District Inspector General, I have received two Spot Awards, four Association of Government Accountants Awards, 12 Superior Accomplishment Awards, one OIG Special Team Award, one Special Recognition Award from the Inspector General, OIG's Audit Manager of the Year Award, an Award for Excellence from the President's Council on Integrity and Efficiency, and several letters of thanks from Congressmen and the Inspector General. In my 25 years of federal service I have never been reprimanded. Indeed, my service to HUD and the accolades I have received from HUD as herein partially recounted, indicate that this reprimand is motivated not by my performance or for the reasons stated. It is retaliatory.

A partial list of the retaliatory acts that I have endured since July 16, 2001, include:

- Mr. Saddler, Counsel to the Inspector General, threatened me shortly after July 16, 2001, that something would have to be done because of disagreements between myself and Larry Chapman, Special Agent in Charge, Fort Worth. Mr. Chapman was present at my July 16, 2001, deposition where I criticized him and HUD OIG management in connection with Mr. Tighe's EEO complaints.

- Mr. Heist, Assistant Inspector General for Audit, ordered me to take disciplinary action against one of my Assistant District Inspector Generals for the "tone of his e-mail." This ADIG is a winner of the OIG Auditor of the Year award and the President's Council on Integrity and Efficiency Award for Excellence. See Enclosure 2.

- Since July 16, 2001, Mr. Phelps has engaged in continuous harassment of me, made unreasonable demands in an effort to disrupt the working relationships in my office. He has also continuously criticized me and my office. He constantly tells me that Mr. Williams, Acting Inspector General, is not pleased with the work in the Southwest district. He constantly asks me about audits in my office. He did not engage in these activities, criticisms, and threats prior to July 16, 2001.

2

1. Mr. Phelps informed me in late July that I could no longer expect any support for opposing a change in management decision I was pursuing with HUD management on the *Houston Home* audit, regardless of the grounds I intended to pursue.

2. Mr. Phelps unilaterally pursued an investigation against Senior Auditor Faye Sullins based on a groundless complaint only later provided to me. In response to health problems caused by this announced unilateral investigation, Ms. Sullins resigned. This has interfered with my effectiveness as a manager in my district. The treatment of Ms. Sullins differs vastly from the treatment received by District Inspector General Temme, who suffered from similar groundless complaints. A timeline of the circumstances surrounding Ms. Sullins resignation is on pages 7 & 8 of the Informal Grievance included in Enclosure 1.

3. Mr. Phelps and Mr. Heist insulted the efforts of three Southwest District auditors under my supervision in their efforts to issue reports to HUD management (See Enclosure 1, Informal Grievance Attachment 12).

4. Mr. Phelps questioned travel voucher items in a threatening manner that prompted me to remove valid travel expenses from my travel vouchers in order to avoid sanctions over technicalities. (It became obvious to me Mr. Phelps was looking for anything to give me a reprimand. His demeanor during a conference call was threatening, demanding to know if I had just violated a new policy on informing auditees of all information before giving them draft audit reports. He had questioned Dave Derecola in headquarters to find out why my region was the only region working referrals from the HUD Enforcement Center, he directed Roy Rhodes in headquarters to obtain documentation on when my region had obtained management decision on the *Harmony House* audit. When he learned Assistant District Inspector General Will Nixon had mailed the documentation, he demanded Mr. Nixon fax it to him.) On February 20, 2002, he attacked me verbally in a meeting demanding to know who I thought I was that I did not have to follow HUD travel policy. On that date he gave me a letter responding to a memo I had sent him. See Enclosure 3 for email, vouchers, and memoranda on this subject. District Inspector General Wolfe has committed similar errors that Mr. Phelps cites I committed, but he has not received a letter similar to the one I received. Further, at a March 2002 managers' conference, he responded to questions regarding travel with the response he would see if he could get a legal opinion that exempted us from HUD travel policy.

5. Mr. Phelps called me to appear at headquarters on February 20, 2002 for my annual rating. During the discussion Mr. Phelps berated me and told me I was difficult to manage. He said I frequently failed to follow HUD policy and cited as examples that I hired an Administrative Officer without his permission, that I had written a letter to Senator Nichols to close out a constituent complaint without first obtaining headquarters approval, and that I had failed to get a management decision on the Harmony House audit within the 120-day deadline. He also complained I was using

3

regular mail rather than fedex and said that in the future, I should not have my staff sit in on conference calls when he and Mr. Heist wanted discuss draft reports with me. He said he and Mr. Heist had to "argue" to tone down the reports on the Housing Authority of New Orleans and HUD's Compliance with the Government Performance Results Act. He told me the days of Susan Gaffney were over, that Coumo was gone, that I was no longer to "piss off the politicals," and that I was to assume HUD management was going to be helpful until informed otherwise. He had not raised any of these issues in any prior conversations, and since he did not give me a midyear review, it was the first time he expressed any concerns with my performance. Thus, I was unprepared to discuss any of the issues in a meaningful manner. Following this tirade, Mr. Phelps handed me the reprimand.

6. Mr. Phelps did not include in my annual review any of my accomplishments although he had solicited my written comments and such comments were supplied to him for preparation of the review. See Enclosure 4.

7. On March 4, 2002, Mr. Phelps prepared a memo asking for a reply by March 15, 2002, when he knew I would not be in my office from March 4 to March 18, 2002. See Enclosure 5.