UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| D. MICHAEL BEARD, | ) |
| | ) |
| Plaintiff, | ) |
| | ) C.A. No. 06-0756 (GK) |
| v. | ) |
| | ) |
| ALPHONSO R. JACKSON, | ) |
|   Secretary Of Housing And | ) |
|   Urban Development, | ) |
| | ) |
| Defendant. | ) |

## DECLARATION OF MOLLY E. BUIE, ESQ.

I, Molly E. Buie, Esq., being first duly sworn, do hereby depose and state as follows:

1.) I am the second chair counsel representing plaintiff, D. Michael Beard, in this action. I have shared responsibility with lead counsel, Robert C. Seldon, Esq., for conducting discovery and for jointly developing the factual record needed by plaintiff to oppose summary judgment.

2.) During discovery in this case, plaintiff took extensive written discovery and the depositions of the four Department of Housing and Urban Development, Office of Inspector General (HUD OIG) managers who were involved in reassigning plaintiff from his position as Regional Inspector General for Audit for Region VI. Plaintiff did not depose William Nixon, the Assistant Regional Inspector General for Audit for Region VI, because Mr. Nixon had assured Mr. Beard that he would voluntarily assist plaintiff in opposing summary judgment.[1]

---

[1] Mr. Nixon is listed as a witness in plaintiff's Initial Disclosures.

1

3.) After defendant filed its Motion for Summary Judgment, Mr. Beard forwarded the Motion to Mr. Nixon for his review and comment, specifically as it concerned allegations that under Mr. Beard's supervision, Mr. Nixon had mishandled the audit of CVR Associates. I exchanged emails with Mr. Nixon between May 15 and May 20, 2007, and scheduled a time to interview him telephonically on May 23. Attachment A. I conducted the interview that day, and based on the information I learned from Mr. Nixon as well as some of the documents received in discovery, I drafted a declaration for Mr. Nixon's review and approval. I emailed the declaration to Mr. Nixon on May 29, 2007. Attachments B-C. In total, I spent approximately 10 hours interviewing Mr. Nixon, reviewing the documents relevant to his declaration, preparing the draft declaration, and emailing Mr. Nixon about these same matters.

4.) I received an email from Mr. Nixon on June 4, 2007, in which he stated that he had just found my email in his inbox and that he would respond as soon as he could. Attachment D (at bottom). In his email, Mr. Nixon stated that he does "want to help, but [does not] want to kill [his] career unnecessarily." Id. Mr. Nixon sent a similar message to plaintiff. Attachment E. I responded to Mr. Nixon's email and asked to speak to him by telephone. Attachment D (at top).

5.) Mr. Nixon sent another email on June 6, 2007, stating that he would not sign the declaration. Attachment F. He said that he does not "have any major disagreement with the declaration (just a couple of corrections)" but that "it reads (and I understand the reason why) that I am calling [Assistant Deputy Inspector General for Audit] Heist a liar. I can't volunteer to do that – I do believe they would retaliate – not only within the organization but also maligning my abilities, character, etc. if I try to get another job." Id.

6.) The information contained in the draft declaration, the substance of which Mr. Nixon agreed with (see Attachments D-F), directly refutes several of the claims defendant made on summary judgment. Specifically, defendant claims that Region VI used inappropriate criteria in the CVR Associates audit report (Def. Mem. at 8-9, 26-27); failed to properly vet legal issues in the CVR audit (id. at 8, 26); failed to adhere to OIG policy by not submitting a survey report for the audit (id. at 9, 27); failed to keep Headquarters informed about the CVR audit (id.); and used "inappropriate language" in the draft audit report (id.).

7.) Mr. Nixon confirmed that Headquarters was involved in the decision to assign the CVR Associates audit to Region VI and was kept fully informed about developments with the audit through bi-weekly briefing papers, monthly teleconferences, and weekly priority reports prepared for IG Donohue. See Attachment C at ¶¶ 6-9. He also confirmed that the requirement to submit audit survey reports, which defendant claims Region VI failed to do, was not implemented by the OIG until after Region VI had completed the CVR Associates audit. Id. ¶¶ 10-11. He refuted HUD OIG's claim that Region VI used inappropriate language in the CVR audit report (id. ¶¶ 14-17, 28-32) and addressed defendant's claims that Region VI failed to properly vet legal issues in the CVR audit, and that it applied the wrong criteria in the draft audit report (id. ¶¶ 22-27).

8.) This information goes directly to one of defendant's articulated justifications for its decision to reassign plaintiff – that plaintiff's performance on several key audits was poor. See Def. Mem. at 7-9, 25-27. Moreover, it shows that the agency misrepresented some of the facts regarding the CVR audit in its Motion, which, together with a prima facie case is basis enough for denying summary judgment. See Aka v. Washington Hospital Center, 156 F.3d 1284, 1293, 1295 (D.C. Cir. 1998).

3

9.) Accordingly, plaintiff respectfully requests that summary judgment briefing be continued for a short period of time to allow plaintiff to take Mr. Nixon's deposition. If the Court grants plaintiff's Motion, either Mr. Seldon or I will immediately be available to conduct Mr. Nixon's deposition. We will request an expedited deposition transcript and submit plaintiff's Opposition within two weeks of its receipt.

I hereby declare under penalty of perjury that the foregoing is true and correct, to the best of my knowledge information and belief.

Executed this 8th day of June, 2007

/s/
_____
Molly E. Buie, Esq.