PLAINTIFF'S EXHIBIT 16



U.S. DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT
**Office of Inspector General**
451 7th St., S.W.
WASHINGTON, D.C.  20410-4500

*Reproduced below is TOP's review of the CVR draft report and Region 6 comments appear in italics.*

MEMORANDUM FOR:  D. Michael Beard, Regional Inspector General for Audit, 6AGA

FROM:  James A. Heist, Assistant Inspector General for Audit, GA

SUBJECT:  Housing Authority of New Orleans Contracts With CVR Associates, Inc. New Orleans, LA

As noted in my email to you dated October 27, 2004, I directed TOP to review this assignment.  Attached is their report on this review.  It is evident that the report as presently drafted cannot be issued.  We found problems with inadequate finding support, the use of inappropriate criteria and non-compliance with several elements of the Audit Operations Manual and Government Auditing Standards.  We carefully examined the support for each of your draft report recommendations.  Many of the contract problems squarely rest with HANO and you performed insufficient work at HANO to make recommendations for corrective actions.

*There are no specific statements indicating noncompliance with the Audit Operations Manual or Government Audit Standards.  The careful examination TOP conducted did not include inquiries of the auditors or examination of the thousands of hard copy documents Region 6 subpoenaed from CVR.  The report does not identify any contract problems with HANO or what work we did not perform that was needed to meet the stated objectives of the audit.  There was never an audit objective to review contracting at HANO.  TOP's desire to write a finding stating the Authority was not properly managed, did not follow procurement regulations, did not oversee contracts, and permitted conflicts of interest to exist is beyond the stated scope of the audit to determine whether:  CVR Associates complied with the provisions in its contract with the Housing Authority of New Orleans; costs that CVR Associates billed to the Housing authority of New Orleans were for eligible expenses and whether mark-up charges CVR Associates added to sub-contract expenses were eligible charges; and whether conflicts of interest existed.*

TOP concluded and I concur that there is no need for a formal audit report, and that the one remaining matter can be covered in two pieces of correspondence signed by you.

Prepare a letter to the Louisiana State Ethics Board regarding the ethical violation of Kevin Marchman in accepting a $20,000 payment from CVR Associates.  Provide detail to the

Board of your audit evidence, how you obtained such evidence and request a periodic report on the status of the referral.

Prepare a memorandum to the Assistant Secretary of Public and Indian Housing to inform him of the letter to the Louisiana State Ethics Board.

I believe we can accomplish our primary reporting mission through this correspondence. Please submit this correspondence for TOP review within the next two weeks.

Attachment

Technical Oversight and Planning Division
Report on Review of Draft Audit Report
Housing Authority of New Orleans (HANO)
Contracts with CVR Associates Inc.

We provided comments on the initial draft report and referred the report to IG Counsel to answer several specific questions on contractual matters. Moreover, one of Counsel's attorneys visited Ft. Worth and discussed the report with Region 6 staff. Region 6 had our initial comments and Counsel's comments for consideration in preparing the most current draft. The revised discussion draft did not contain sufficient evidence to justify the six findings and associated recommendations as discussed in the following paragraphs.

*This paragraph is misleading. Mr. Nixon worked with Counsel Brian Baker to visit Senior Auditors Wade and Kunst in Fort Worth. Mr. Nixon knew it was important for Mr. Baker to see and to review the boxes of hard copy work papers. Following that meeting, we prepared and sent a revised draft reflecting suggestions Mr. Baker made during his visit.*

*The statement we had TOP's initial comments is also misleading. We received those comments on September 15th. On September 20th we responded to TOP asking for specificity to clarify their assertion Senior Auditors Wade & Kunst were biased, had not stuck to the facts, and only had conjecture to support their findings. In our response, we also provided additional information to TOP why we had structured the report in six findings rather than the two they suggested, and why we included information TOP considered tangential. On October 5th, TOP's Director McLeod informed he was not going to respond to our inquiries until he heard from OGC. He never did send us any further comments.*

Findings and Recommendations:

Region 6 recommends in 1A that HUD direct the HA to initiate legal action to seek recovery of the $145,625 for the out of scope work CVR initiated.

On page 11, the discussion draft explains that the HA amended the contract to retroactively include the out of scope work. Region 6's evidence did not demonstrate that the Assistant Secretary for PIH in his capacity as acting Board for HANO did not approve the disbursement to CVR for $145,625. Consequently, the audit evidence is insufficient to justify recovery of the $145,625.

*The forgoing hypothesizes the Assistant Secretary for Public and Indian Housing approved the disbursements. The Assistant Secretary for Public and Indian Housing had no involvement in this process. HANO's Executive Director approved the amendment to the contract. However, retroactive approval of an amendment would not negate the fact that CVR Associates, Inc. initiated and performed work when it had no authority to do so. Based upon procurement requirements, HANO should have conducted a new, separate procurement since the work was outside the scope of the original contract. We have several documents that TOP did not examine that show CVR Associates, Inc. and HANO acknowledged the work represented an expansion in scope. These work papers are located in Fort Worth and to our*

3

*knowledge, no member of TOP reviewed these documents or spoke with staff to obtain these documents.*

Region 6 recommends in 1 B that HUD direct the HA to repay the $444,042 it inappropriately paid after the contract expired.

Region 6's report did not provide any evidence that the services were actually performed after August 12, 1999 as opposed to the billings just being late. Further, the discussion draft states that extending the contract beyond 2 years would have required approval from HUD. Region 6's evidence did not demonstrate that the Assistant Secretary for PIH in his capacity as acting Board for HANO did not approve both the contract extension and each individual disbursement. Consequently, the audit evidence is insufficient to justify recovery of the $444,042.

*The forgoing hypothesizes the workpapers cannot support statements in the draft report and that the Assistant Secretary for Public and Indian Housing approved the extension and disbursement. Our workpapers show the $444,042 in payments to CVR Associates, Inc. was for services provided after August 12, 1999. The billings were not late. Had TOP asked the auditors or reviewed the work papers, TOP would have seen the workpapers support the statements in our report. The finding is referenced to workpapers (G-01-aa referenced to support at G-01-v; G-01-w; G-01-x; G-01-y; G-01-z and G-01-aa). Again, the Assistant Secretary for Public and Indian Housing had no involvement in this process. As the workpapers show, HANO's Executive Director approved the individual payments.*

*There was no contract extension beyond August 12, 1999. CVR Associates simply continued to bill and HANO continued to pay.*

Region 6 recommends in 1C that HUD take appropriate sanctions against CVR Associates, Inc and its principals.

This recommendation was based on the first two recommendations that are not supported.

*As noted above, Senior Auditors Wade & Kunst have the support for both recommendations but no one at TOP reviewed the workpapers or asked to see them. Furthermore, the recommendation was not based on the preceding two recommendations, but the information provided in the finding.*

Region 6 recommends in 1D that HUD take appropriate administrative sanctions against former Authority administrators for actions taken in the administration of this contract.

As discussed above, Region 6 did not demonstrate that the HA actions were never authorized.

*As noted above, Senior Auditors Wade & Kunst have the support for both recommendations but no one at TOP reviewed the workpapers or asked to see it. Furthermore, the recommendation was not based on the preceding two recommendations, but the information provided in the finding.*

Region 6 recommends in 2A that HUD direct the HA to initiate legal action to seek recovery of the $1,088,898 CVR overcharged for individual subcontractors and recommendation 2B is to initiate legal action to recover the $68,345 CVR overcharged for third-party invoices.

IG Counsel advised in their memorandum that they would be glad to examine a revised draft to assess whether a basis for action against CVR exists under the FAR. Region 6's revised discussion draft did not change. The revised draft does not present the evidence to demonstrate that CVR violated the criteria in FAR as requested by IG Legal Counsel.

*The forgoing is factually incorrect. The revised draft has five cites to the Federal Acquisition Regulations (FAR) as counsel requested (pages 5, 16, 28, 30, & 33). The reference on page 16 is for Finding 2. Thus, the revised draft did present changes counsel requested. TOP's review did not disclose whether it consulted with legal counsel or if this is TOP's opinion of what legal counsel's opinion might be. It is not clear to us if legal counsel ever reviewed either revised draft.*

Region 6 recommends in 2C that HUD take appropriate administrative sanctions against CVR Associates, Inc and its principals and 2D recommends appropriate administrative sanctions against form Authority administrators.

The revised discussion draft did not contain the evidence as requested by IG Counsel, in their memorandum, to demonstrate that CVR principals and former HA administrators violated the FAR and are subject to administrative sanctions.

*The forgoing is factually incorrect. The revised draft has five cites to the FAR as counsel requested (pages 5, 16, 28, 30, & 33). The reference on page 16 is for Finding 2. Thus, the revised draft did present changes counsel requested. TOP's review did not disclose whether it consulted with legal counsel or if this is TOP's opinion of what legal counsel's opinion might be.*

Region 6 recommends in 2E in the initial discussion draft that HUD should refer to the IRS for resolution of whether CVR misclassified employees as independent contractors.

IG Counsel advised in their memorandum that until evidence presented in the draft report demonstrates that such misclassifications (of subcontractors) falls within the OIG's authority, there is no pressing reason to consult the IRS on this issue other than to foster comity between agencies. The revised draft report contained the same evidence and recommendation as the report reviewed by IG Counsel.

*The foregoing is enigmatic since the draft report did not suggest the OIG consult with the IRS. However, the information we included in the draft is required by government audit standards that expect us to report possible fraud, illegal acts, violations of contracts, and abuse.*

Region 6 recommends that HUD direct the HA to initiate legal action to seek recovery of duplicate billings in 3A the amount of $18,902 for subcontractor Casterline & Associates, in 3B

5

the amount of $6,116 in the initial discussion draft and increased to $7,206 in the revised draft for other items, and in 3C the amount of $22,500 for expenses related to another contract.

On page 25 of the draft report, footnote 30, it states due to the numerous invoices, personnel, independent subcontractors, accounts, poor recording keeping by CVR, it is undeterminable whether all such duplicate costs were detected. Conversely, CVR's poor recording keeping may not disclose the HA repayments or offsets for duplicate billings. Region 6's audit work did not check HA records for recovery or offset at a later date.

*The foregoing is not factually accurate. The footnote was meant to disclose that we did not look for each incident of CVR Associates double-charging immaterial amounts, i.e. $21.75 for telephone expenses. We subpoenaed and examined CVR Associates' records and there was no evidence that CVR Associates repaid or offset amounts cited in the finding. TOP's hypothesis for dropping a finding disclosing $47,518 in verified duplicate charges is unfounded. No CVR Associates invoices reflected offsets for previously double-billed amounts.*

Region 6 recommends in 3D that HUD direct the HA to initiate legal action to seek recovery of the $26,421 for amounts CVR over billed and for questioned travel airfare upgrades, tips, and other ineligible and abusive charges.

IG Counsel advised in their memorandum that finding 3 mistakenly analyzes CVR's travel costs using A-87. IG Counsel stated that A-87 does not apply to CVR because it is a for-profit entity and CVR's costs must be analyzed under FAR. The revised draft increased the questioned amount to $36,738 but did not delete the reference to A-87 and did not demonstrate that the FAR was violated.

*The foregoing is not factually accurate. The report references the FAR on page 28. As legal counsel's opinion stated, OMB Circular A-87 would be the appropriate criteria to evaluate whether HANO could charge the expenses to the government and the FAR would be appropriate to show whether CVR Associates, Inc., could charge the expenses. As cost principles, both OMB Circular A-87 and the FAR have similar language, thus we referenced both to this finding on page 28. By citing both criteria, we provide the criteria that HUD should purse the funds from HANO if it chooses not to seek reimbursement from CVR Associates, Inc.*

Region 6 recommends in 3E that HUD take appropriate sanctions against CVR Associates, Inc and its principals.

We do not agree that a debarment action is appropriate because the dollar amounts in this finding are minor.

*The report does not recommend debarment action. As noted above, it recommends appropriate sanctions. The decision to take any sanctions rests with HUD. Further, the recommendation is not based solely on dollars, but the whole of CVR Associates', Inc. actions disclosed in the finding.*

Region 6 recommends that HUD direct the HA to initiate legal action to seek recovery in 4A of $22,107 for off-site office space, in 4B of $20,208 for telephone expenses, in 4C of $36,215 for clerical support, and in 4D to initiate administrative sanctions against CVR principals.

The initial draft contained finding 4 captioned as the Authority inappropriately subsidized CVR business expenses. IG Counsel reviewed the criteria for the finding and stated that the finding did not offer a strong basis for action regarding inappropriate charges. IG Counsel recommended that subsequent drafts explore an alternative theory that CVR's expenses are unrelated to its contractual duties and offered to evaluate the legal sufficiency of this theory at that time. The 10-27-04 draft revised the criteria for finding 4 modified on page 33 in one paragraph and contained the same recommendation with the exception of increasing the amount questioned by a minor amount. The discussion draft changes do not provide sufficient evidence that CVR expenses are unrelated to the contractual duties.

*TOP's statements are misleading. As noted in legal counsel's opinion, Senior Auditors Wade & Kunst proposed the alternative theory to Mr. Baker when he visited Fort Worth on September 29th. They included that theory in the revised draft. Furthermore, both Senior Auditors are under the impression that the changes were sufficient for legal counsel. TOP's report did not disclose whether it discussed the changes with legal counsel or if this is their opinion of what legal counsel's opinion might be.*

Region 6 recommends in 5A that HUD direct the HA to repay its program $131,840.

The Assistant Secretary for Public and Indian Housing, also fulfilling the dual responsibility as the Board of HANO, approved the contract and authorized the disbursement of $131,840. The draft report inappropriately recommends that HUD undo what it previously authorized.

*The foregoing is not factually correct. The Assistant Secretary for Public and Indian Housing did not approve the contract nor authorize the disbursement of $131,840. TOP would have been aware of this if it had reviewed the workpapers or asked the Senior Auditors. HANO's Executive Director approved the contract.*

*Furthermore, had the Assistant Secretary for Public and Indian Housing approved the contract, he would not have been doing it on HUD's behalf. The Housing Act of 1937, as amended, clearly states if the Secretary takes possession of a public housing agency, "The Secretary or receiver shall be deemed to be acting not in the official capacity of that person or entity, but rather in the capacity of the public housing agency, and any liability incurred, regardless of whether the incident giving rise to that liability occurred while the Secretary or receiver was in possession of all or part of the public housing agency (including all or part of any project or program of the agency), shall be the liability of the public housing agency."*

Region 6 recommends in 5B that HUD take appropriate administrative sanctions against former Authority administrators.

The HA former administrators were performing their duties as directed by HUD and in accordance with the provision of the Cooperative Endeavor Agreement.

*The foregoing is enigmatic since neither HUD nor the Cooperative Endeavor Agreement directed the Deputy Executive Director to interfere in or circumvent the procurement process. CVR Associates, Inc., originally lost the bid by 16.3 points. After the Deputy Executive Director interfered, CVR Associates, Inc. won by 1.3 points. This is a reportable incident.*

Region 6 recommends in 6A that HUD refer the apparent conflicts of interest to the state Ethics Panel for resolution.

IG Counsel stated that finding number 6 should be pared down significantly. Specifically, the irrelevant points that do not bear upon the finding include, but are not limited to, CVR enjoyment of a decade long relationship, HANO's counsel advise on the ban, and whether HUD exonerated Mr. Marchman of federal ethics violation in footnote 54.

The finding was not pared down significantly and irrelevant points remain. The footnote reference was deleted but the other two references remain.

This issue can be addressed in a letter to the State recommending action against Mr. Marchman. IG can take this action without obtaining HUD approval or requesting HUD to take the action. You should notify the Assistant Secretary for Public and Indian Housing that the memo has been sent and its contents.

*TOP merely gives an opinion. As noted in our email of October 26th, at legal counsel's suggestion, we moved the discussion of the State ethics violations up front to highlight it, and then followed with the other conflict of interest discussions. As the topic of the finding is conflicts of interest, we believe the discussion of Marchman's long-standing relationship with CVR Associates, Inc. and its principals is appropriate and vital. We believe it important to give HUD and the reading public all available information on the role Mr. Marchman played in the process and the interrelationships of the people involved.*

Region 6 recommends in 6B that HUD take appropriate administrative action against CVR Associates Inc. and its principals.

The draft report does not provide sufficient specific evidence against CVR principals or the names of the principals to justify the debarment action.

*We disagree. HUD decides whether or not to debar or take any administrative sanctions.*

*Region 6 recommends in 6C that HUD take appropriate administrative action against Mr. Marchman and Ms. Hill.*

Region 6 has already prepared a referral on Ms. Hill and that should be sufficient to address this problem. With respect to Mr. Marchman we have discussed this with Counsel. We know that the contract schedules should have been attached and maintained, but whether failure to do so constitutes an offense indicating a lack of business integrity seems highly suspect. Incompetence, perhaps, but probably not a lack of integrity. Unless someone prosecutes

Marchman successfully – and for misdeeds in connection with maintaining the contract documents, not for taking CVR money within the 2-year post-employment ban – this debarment theory does not meet the criteria for a debarment action as set fort in applicable regulations.

*Region 6 has not participated in any discussions with TOP or legal counsel regarding the recommendations for appropriate administrative sanctions. The discussions mentioned above were ex parte and not reflected in the workpapers. Furthermore, the recommendation for administrative sanctions against Mr. Marchman are based on the conflict of interest discussed in the finding, not on poor documentation in the procurement file.*

<u>IG Audit Operations Manual and</u>
<u>Government Auditing Standards:</u>

Audit Operations Manual (AOM) paragraph 4-2A5(3) states that auditors must describe in narrative what items are selected, the selection process limitations if any and resulting conclusions in the Objective, Scope, and Methodology paragraph. For the most part this was accomplished. However, in footnote 35 the draft report states we performed limited testing to determine if CVR may have charged the Authority for work performed for other housing authorities or charged more than one housing authority for the same expenses. The results were inconclusive and further work was not performed due to time constraints. The revised discussion draft did not disclose the limitation on time in the Objective, Scope and Methodology paragraph.

*The foregoing is enigmatic. The draft report does not cite a scope limitation.*

AOM paragraph 3-16A3 states that findings must be fully and objectively developed and presented in an unbiased manner. Further, the Government Auditing Standards paragraph 8.46 states objectivity requires that the presentation of the entire report be balanced in content and tone. The Government Auditing Standards, paragraph 8.47 elaborates to state that tone should be balanced by requiring that reports present sound and logical evidence to support conclusions while refraining from using adjectives or adverbs that characterize evidence in a way that implies criticism or unsupported conclusions. We informed Region 6 in commentary on the initial draft that biased terms were noted and should be deleted. The revised report contains the same biased words. The lists of biased words and or phrases are on the following table.

*TOP's comments are misleading. First, TOP did not inform us that "biased terms" were noted and should be deleted. TOP said: "There are dozens of flagrant expressions and words that need to be removed." Despite our asking, TOP refused to identify which expressions or words they wanted removed. Thus, we could not take any action on their request. The words TOP now identifies as "biased words" includes boyfriend, may have, believe, frugal, wasteful spending, sloppy, benign, and flawed. They also include words the Audit Report Template uses in "boilerplate" passages. Had we had their list when we asked, we would have considered some wordsmithing. Nonetheless, Senior Auditors Wade & Kunst, along with ARIG Nixon and RIG Beard consider the conclusions and words in the report as supported. For example, we used the word "boyfriend" because that is the word Ms. Hill used to describe him to us as referenced in the workpapers.*

9

| Page/Paragraph | Biased Word/Phrase | Page/Paragraph | Biased Word/Phrase |
|---|---|---|---|
| iii/1st | Permeated | 33/1st | Hid |
| iii/1st | Notoriously | 33/4th | Frugal |
| iii/1st | reap windfall profits | 34/2nd | Extravagance |
| iii/2nd | Harmed | 34/1st | Extravagance |
| 1/1st | Ineptitude | 34/2nd | Appears |
| 1/2nd | Founder | 34/3rd | wasteful spending |
| 4/1st | Steer business | 34/4th | Extravagant |
| 4/2nd | Apparent | 35/1st | Buried |
| 4/2nd | Permeated | 35/1st | Appears |
| 7/1st | Notoriously | 35/4th | Appear |
| 7/1st | exploit flaws | 36/1st | Pervade |
| 7/1st | unduly enriching | 37/1st | Concealed |
| 9/3rd | exploit the Authority | 36/caption | Exploited |
| 9/4th | Windfall profits | 39/title | Steered |
| 11/1st | free rein | 39/1st | Appears |
| 12/2nd | Conjured up | 39/1st | Steer business |
| 12/3rd | poor management acumen | 39/1st | Apparently futile effort |
| 13/1st | Flawed | 39/3rd | Futile |
| 13/1st | cannot take advantage | 42/3rd | Double dipping |
| 15/1st | CVR implied | 44/caption | Sloppy |
| 15/1st | CVR may have violated | 44/5th | Defiance |
| 18/2nd | bait and switch | 45/5th | Suggested |
| 18/4th | Fledgling | 49/title | Permeated |
| 18/4th | Miniscule | 49/1st | May |
| 19/4th | bottom line | 49/1st | Appear |
| 20/1st | Windfall | 49/1st | Apparent |
| 23/Title | Abusive | 49/caption | May have |
| 23/1st | Abusive | 49/2nd | May have |
| 24/1st | Sloppy | 51/caption | Apparent |
| 24/1st | Inept | 51/4th | Appears |
| 25/title | Sloppy | 51/3rd | Apparent |
| 26/2nd | Benign | 52/1st | Apparent |
| 26/2nd | Indulgences | 52/2nd | Ms. Hill's boyfriend |
| 26/2nd | Abusive | 53/1st | Ms. Hill's boyfriend |
| 27/3rd | Appeared | 53/1st | Cavalier |
| 30/2nd | Well-paid | 53/2nd | Boyfriend |
| 30/2nd | Exploit | 53/2nd | May have |
| 30/title | Haphazardly | 59/1st | May not |
| 31/1st | Apparently | 59/4th | Believe |

10

Government Auditing Standards describe the elements for a quality report including being complete and concise. In paragraph 8.41 the Government Auditing Standards require that the report contain all evidence needed to satisfy the audit objectives and promote an adequate and correct understanding of the matters reported. Paragraph 8.53 requires that the report be no longer than necessary to convey and support the message. It states further that extraneous detail detracts from a report and may even conceal the real message and may confuse or distract the user.

The revised discussion draft does not comply with the standards for being complete and concise. In the draft report's Background section on page 1 in the first paragraph the discussion draft states "HUD allowed the Authority to manipulate itself off the troubled list through the use of self-certified performance scores". In the Background section beginning on page 3, the discussion draft states that the Authority awarded three contracts to CVR including the contract for technical assistance for $2,778,240 and on page 4 the discussion draft discusses the technical assistance contract in detail. The discussion about the troubled list and technical assistance contract is extraneous detail because the discussion draft did not demonstrate its relevance to the audit objectives.

*Region 6 considers the draft report complete and concise and in full compliance with standards. TOP implies the Background section is not concise. However, government audit standards expect the background provide a context for the overall message to help the reader understand the findings and significance of the issues discussed. We believe the information in the Background did provide that required context. TOP does not provide any examples regarding completeness or the conciseness of the findings.*

AOM paragraph 3-17c2 states that auditors must provide HUD management with as much information as possible to help in determining what action they should take. The findings did not identify the source of funds nor the programs being charged and therefore will not assist HUD management in deciding on the appropriate action to take.

*The OIG normally includes this in ARCATS for HUD. Nonetheless, the auditors could have answered this question if asked. HANO's records included CVR Associates' monthly invoices along with copies of the LOCCS drawdown forms showing the source of HUD funds HANO used to pay CVR Associates, Inc. All funds used to pay CVR Associates, Inc. were from what HUD now calls the Capital Funding Program. This information was in the workpapers.*

AOM paragraph 4-2A5a [sic] describes the information needed for the Background section of the report. The Background section normally will not discuss the content of the findings. However, the discussion draft did include in, the Background section, information about the finding on the payment to Mr. Marchman in violation of the Louisiana Ethics Law, and on the discrepancies in the procurement process. Similarly, AOM paragraph 4-2A5b [sic] describes the information needed for the Scope and Methodology section of the report. The Scope and Methodology section normally will not discuss the content of the findings. However, the discussion draft did include in the Objective and Scope section information about the content of the six audit findings.

*The foregoing is enigmatic*.

Policies and Procedures:
AOM paragraph 1-5 discusses the inter-office communications and coordination needed between OIG offices in both Headquarters and the Regions. The AOM recognizes that auditors may need the advice of IG Counsel. For this assignment the region should have consulted IG Counsel for clarification of numerous requirements on a for-profit entity because the contractual provisions were not clear. The region used OMB A-87 as the criterion and as IG Counsel explained this criterion is not for a for-profit entity and Federal Acquisition Regulations apply. The region interpreted the contractual provision as not permitting CVR to substitute personnel but IG Counsel disagrees and states the region will not prevail in this argument. The region interpreted the contract provision as not allowing CVR to charge for certain expenses but IG Counsel states that the evidence does not present a strong breach theory although an alternative approach is possible. The region expended a significant amount of audit resources that could have been avoided if IG Counsel's advice had been obtained early in the audit.

*TOP's statement is self-serving. First, it cites an inter-office communications and coordination requirement it ignored in processing their report and in their dealings with the Region. Second, it assumes Region 6 identified issues requiring a legal opinion and then failed to contact legal counsel. The Region did not identify any issues requiring a legal opinion. Further, the questions TOP asked legal counsel did not include any statements asking questions about the FAR. Finally, both OMB Circular A-87 and the FAR define "cost principles" which do not change. Principles are principles.*