## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **D. MICHAEL BEARD,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **C.A. No. 06-0756 (GK)** |
| | ) | |
| **ALPHONSO R. JACKSON,** | ) | |
| **Secretary, U.S. Dept. of** | ) | |
| **Housing and Urban** | ) | |
| **Development,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| _____ | ) | |

### DEFENDANT'S REPLY TO PLAINTIFF'S
### STATEMENT OF PURPORTED GENUINE ISSUES

Defendant respectfully submits this reply to "Plaintiff's Statement of Genuine

Issues" ("Plaintiff's Statement").

## I. INTRODUCTION

Plaintiff's Statement fails to establish that there are any genuine issues of material

fact for trial.  To the contrary, Plaintiff concedes a large number of Defendant's facts.

Further, he fails to establish a genuine issue for several facts he claims to dispute, either

by responding to inaccurate or mischaracterized versions of Defendant's statements of

fact, employing subjective, speculative and/or wholly conclusory statements, or by

providing unsupported and/or irrelevant information.  Moreover, Plaintiff frequently

ignores his own binding testimony.  These tactics do not establish a genuine issue of

material fact regarding unlawful discrimination or retaliation.   Therefore, Defendant

respectfully requests that its Motion for Summary Judgment be granted its entirety.

## II.  ARGUMENT

### A.  Legal Standard

Local Rule 7(h) requires that an opposition to a motion for summary judgment be accompanied by "a separate concise statement of genuine issues setting forth all material facts as to which it is contended there exists a genuine issue necessary to be litigated, which shall include references to the parts of the record relied on to support the statement."  The opposing statement of genuine issues must respond <u>directly</u> to the factual statements asserted in the motion for summary judgment.  As stated in the rule:

> In determining a motion for summary judgment, the court may assume that ***facts identified by the moving party*** in its statement of material facts are admitted, unless ***such a fact*** is disputed in the statement of genuine issues filed in opposition to the motion.

LCvR 7(h) (emphases added).  <u>See also</u> LCvR 56.1.

### B.  Sub-Sections I And II Of Plaintiff's Statement Are Unresponsive.

Sub-sections I and II of Plaintiff's Statement contain various factual contentions and legal arguments which are unresponsive to Defendant's Statement.  These two sub-sections are simply a thirty-page reformulation of Plaintiff's forty-five page Opposition to Defendant's Motion for Summary Judgment.  Since these subsections do not comply with LCvR 7(h), Defendant will respond to Plaintiff's legal arguments in its Reply in Support of Defendant's Motion for Summary Judgment.  Defendant responds to Plaintiff's factual contentions below.

### C.  Plaintiff Has Failed To Contest Many Facts Asserted By Defendant.

Plaintiff's Statement fails to directly address facts set forth in the following of Defendant's statements: ¶¶ 10, 11, 12, 15, 18, 22, 27, 28, 32, 34, 35, 37, 45 and 46.

These failures are specifically identified below in Section D of this Memorandum.

Having failed to contest these facts, he must be deemed to have conceded them.  See

LCvR 7(h); Jackson v. Finnegan, Henderson, Farabow, Garrett & Dunner, 101 F.2d 145,

151 (D.C. Cir. 1996); see also Twist v. Meese, 854 F.2d 1421 (D.C. Cir. 1988); Heasley

v. D.C. General Hosp., 180 F. Supp. 158, 163 (D.D.C. 2002); Trawick v. Hantman, 151

F. Supp. 2d 54, 58-59 (D.D.C. 2001).


**D.      Plaintiff's Purported Evidence Fails To Create Genuine Issues Of Material Fact.**

       1.      Admissions With Additional Unresponsive Facts And/Or Arguments

Plaintiff either explicitly admits or does not dispute all, or nearly all, facts set

forth in the following of Defendant's factual statements: ¶¶ 2, 4, 5, 6, 7, 8, 9, 11, 12, 13,

14, 15, 16, 17, 18, 19, 20, 21, 22, 23, 24, 25, 26, 28, 29, 38, 39, 40, 41, 42, 44, and 46.

For most of these statements, Plaintiff provides additional facts and/or arguments in an

apparent attempt to undercut or explain that which he must admit is true.  As discussed

above, Plaintiff's repeated inclusion of legal arguments in this factual discussion is

inappropriate and outside the scope of the discussion required by LCvR 7(h), so

Defendant will not discuss them here.

Defendant's Statement of Fact 7:  Defendant notes that Mr. Heist was not a party

in Tighe v. Cuomo.  In response, Plaintiff **ADMITS** that Mr. Heist was not a party, but

attempts to minimize his admission by arguing that this was only because Mr. Heist

could not have been a party as a matter of law.  This additional representation is purely a

legal argument, not a response as to the truth of Defendant's statement.  Plaintiff includes

it here to imply a genuine issue of material fact when no such issue actually exists.  Both

parties agree: Mr. Heist was not a party in Tighe v. Cuomo. The reasons why are immaterial to this matter. Thus, there is no genuine issue of material fact.

Defendant's Statement of Fact 9: Defendant notes that Mr. Phelps gave Plaintiff a reprimand in February 2002. Plaintiff **ADMITS** that he received this written reprimand. None of this information is disputed, thus there is no genuine issue of material fact. Plaintiff nevertheless argues that the reprimand was unwarranted. Because Defendant's statement said nothing concerning whether the reprimand was warranted, Plaintiff's statement is totally non-responsive and extraneous. Further, it is only Plaintiff's personal opinion, not a statement of objectively verifiable fact; therefore, is insufficient to create a genuine issue of material fact.

Plaintiff also represents that HUD OIG later "vitiated" the reprimand. Once again, Defendant's statement said nothing concerning whether the reprimand was vitiated or otherwise lifted, so this additional representation is also non-responsive and extraneous. Defendant does not dispute that Plaintiff's reprimand was lifted as part of the settlement of his administrative claim; therefore, there is no genuine issue of material fact.

Defendant's Statement of Fact 11: Defendant notes that Mr. Phelps told Plaintiff he frequently failed to follow HUD policy and gave him three examples. In response, Plaintiff fails to admit or deny that Mr. Phelps told him that he frequently failed to follow HUD policy. Since Plaintiff failed to contest this fact, it must be deemed **ADMITTED** for the reasons set forth in Section C above. Plaintiff **ADMITS** that Mr. Phelps informed him of three examples of his failure to follow HUD policy. Since there is no dispute as to what Mr. Phelps said, there is no genuine issue of material fact.

Despite his explicit and implicit admissions to the entirety of Defendant's statement, Plaintiff would not characterize his failures as "frequent." This latter point is simply a personal, argumentative conclusion and, therefore, insufficient to create a genuine issue of material fact.

Defendant's Statement of Fact 12: Defendant notes that a March 28, 2002 memorandum, informed Plaintiff of management's concern about him espousing negative views of headquarters to his staff, thereby "poisoning their views of the organization." In response, Plaintiff fails to admit or deny the memorandum's contents as described in Plaintiff's statement. Since he fails to address these facts, they must be deemed **ADMITTED** for the reasons discussed above. Therefore, there is no genuine issue of material fact.

Rather than address Defendant's actual statement, Plaintiff only "[a]dmit[s]" that he *received* this memorandum. However, Defendant's statement makes no reference to whether Plaintiff received the memorandum, so Plaintiff's statement is totally non-responsive, extraneous, and irrelevant. Plaintiff then attempts to "[d]eny" that (1) the memorandum was warranted, (2) he ever espoused negative views of headquarters to his staff, or (3) he otherwise poisoned their views of headquarters. Defendant's statement refers only to the contents of the memorandum itself, which Plaintiff has impliedly admitted by failing to address them. It does *not* address the grounds for the memorandum. This additional statement by Plaintiff is, therefore, similarly non-responsive, extraneous, and irrelevant. Plaintiff's avoidance of Defendant's statement, and his false "admission" and "denial" to statements Defendant never made, all fail to

create any genuine issue of material fact. Both parties agree as to what is stated in the memorandum, thus there is no genuine issue of material fact.

Defendant's Statement of Fact 14: Defendant notes that Plaintiff's administrative complaint named Mr. Heist, Mr. Phelps, and Mr. Saddler as the allegedly discriminating officials. In response, Plaintiff **ADMITS** this statement, but adds that he alleged both discrimination and retaliation. Defendant does not dispute that Plaintiff made these allegations, but the salient point here is that his administrative complaint named Mr. Heist, Mr. Phelps, and Mr. Saddler. Both sides agree that he named these three individuals in his administrative complaint, so there is no genuine issue of material fact.

Defendant's Statement of Fact 15: Defendant notes that Plaintiff's administrative complaint was resolved by formal approval of a Mediation Settlement Agreement (settlement agreement) on December 4, 2002. Because Plaintiff neither admits nor denies that the settlement agreement resolved his complaint, this fact must be deemed **ADMITTED** in its entirety. Therefore, no genuine issue of material fact exists.

Rather than respond to Defendant's actual statement, Plaintiff tries to admit instead that the settlement agreement was "meant" to resolve it. This attempted nuance is non-responsive, extraneous, and irrelevant. Defendant's statement did not address what the settlement agreement meant to do; it addressed what the settlement agreement actually did. Plaintiff's response attempts to create an issue of material fact when there is none, because Plaintiff does not dispute the information in Defendant's statement.

Defendant's Statement of Fact 17: Defendant notes that when the settlement agreement was signed, Mr. Stephens told Plaintiff that his motivation for settling the administrative complaint was to start anew. Plaintiff **ADMITS** this statement in its

entirety.  Since none of this information is disputed, there is no genuine issue of material

fact.  However, Plaintiff adds a "further response" that this new start "did not happen."

Defendant's statement did not address whether a new start actually occurred.  It

addressed only what Mr. Stephens told Plaintiff.  Plaintiff's "further response" is

therefore non-responsive, extraneous and irrelevant.  Further, it is nothing more than

Plaintiff's personal opinion; as such, Plaintiff's "further response" has no evidentiary

value and must be disregarded.  Both parties agree that Mr. Stephens told Plaintiff that

the motivation for settling the administrative complaint was to start anew; therefore, no

genuine issue of material fact exists.

     <u>Defendant's Statement of Fact 18</u>:  In his response, Plaintiff fails to admit or deny

that he did not file administrative complaints in 2003 or 2004; thus, this fact must be

deemed **ADMITTED** for the reasons discussed previously.  Plaintiff **ADMITS** that he

did not engage in protected activity during 2003 or 2004.  In light of Plaintiff's implied

and express admissions of the information in Defendant's statement, there is no genuine

issue of material fact.

     Apropos of nothing, Plaintiff attempts to "[d]eny that he was not subjected to

reprisal during that time period."  Defendant's statement made no representations

concerning whether Plaintiff had been subjected to reprisal at any time.  Plaintiff's

purported denial is non-responsive and irrelevant.  Once again, Plaintiff labors to create a

"Defendant statement" out of thin air for the express purpose of denying it, in order to

create a genuine issue of material fact.  Plaintiff fails to do so because he **ADMITS** the

entirety of Defendant's statement.

Defendant's Statement of Fact 20:  Plaintiff **ADMITS** that he had a significant amount of autonomy to manage Region VI under Inspector General Susan Gaffney; thus, there is no genuine issue of material fact.

Despite his clear admission, Plaintiff adds a superfluous contention concerning his prior experience under centralized management systems.  Even if Plaintiff's contention were accurate – and for that, we have only Plaintiff's word – it remains totally unresponsive to Defendant's statement, and is irrelevant.  Since both parties agree that Plaintiff enjoyed significant autonomy under Inspector General Susan Gaffney to run Region VI, there is no genuine issue of material fact.

Defendant's Statement of Fact 21:  Plaintiff **ADMITS** that he preferred HUD OIG's prior decentralized management style of the regions.  In addition to his express admission, Plaintiff adds the extraneous point that he was not alone in his preference for decentralized management.  Once again, Plaintiff makes a "further response" that does not actually respond to Defendant's statement.  Defendant's statement does not reference others who may have opinions concerning decentralized management.  Therefore, whether others agreed with Plaintiff concerning such management style is irrelevant.  Because both sides agree that Plaintiff preferred decentralized management, there is no genuine issue of material fact.

Defendant's Statement of Fact 22:  Plaintiff **ADMITS** that Mr. Donohue's management style differed from his predecessor, Susan Gaffney.  Plaintiff fails to admit or deny that HUD OIG's management style changed significantly in March 2002, when Mr. Donohue arrived.  Because Plaintiff does not respond to this fact, he must be deemed to have **ADMITTED** it for the reasons previously discussed.  Because Plaintiff has either

expressly or impliedly admitted to all of the information in Defendant's statement, there is no genuine issue of material fact.

However, Plaintiff again purports to deny something that Defendant never states. Specifically, Plaintiff claims to "[d]eny that it was the first time a centralized management style had been in place at HUD OIG." Defendant's statement makes no representations concerning whether HUD OIG employed a centralized management system prior to Inspector General Donohue taking office. Nevertheless, Plaintiff takes this opportunity to interject a totally non-responsive, irrelevant and extraneous faux denial. Because this tactic does not comply with LCvR 7(h), the Court should disregard it. The parties agree that HUD OIG's management style changed significantly in March 2002, when Kenneth Donohue became the new Inspector General; therefore no genuine issue of material fact exists.

Defendant's Statement of Fact 25: Defendant **ADMITS** that the duties of the Technical Oversight and Planning Division ("TOP") include commenting on draft reports and forwarding those comments to Mr. Heist. Since none of the information in Defendant's statement is disputed, there is no genuine issue of material fact.

To create a disputed issue where none exists, Plaintiff also states that TOP communicated directly with the HUD OIG regional offices on changes to their draft audit reports. This supplemental answer is non-responsive, because Defendant's statement did not represent that TOP only passed comments on to Mr. Heist, or that TOP did not communicate with the regional offices. Plaintiff fails to create a genuine issue of material fact because both sides agree that TOP's duties include commenting on draft reports and forwarding those comments to Mr. Heist.

Defendant's Statement of Fact 28:  In Plaintiff's response, he neither admits nor denies that Inspector General Donohue asked Mr. Stephens to "get involved and resolve" the problems with the CPD draft audit.  Because Plaintiff fails to respond, this fact must be deemed **ADMITTED** for the reasons previously discussed.

Rather than specifically admit or deny the truth of Defendant's statement, Plaintiff purports to "[a]dmit" that Inspector General Donohue "interfered with the normal audit review process regarding the CPD audit," after Mr. Heist and TOP had approved its issuance.  This supposed admission – comprised solely of Plaintiff's subjective characterization of Inspector General Donohue's involvement – is totally non-responsive to Defendant's statement, which references neither the normal audit process, nor the timing of Inspector General Donohue's request to Mr. Stephens.  Moreover, Plaintiff's supposed admission fails to state the nature of Inspector General Donohue's supposed interference.  Again, there is no dispute concerning the information in Defendant's statement; thus, there is no genuine issue of material fact.

Defendant's Statement of Fact 29:  Plaintiff **ADMITS** that Mr. Stephens, Mr. Heist and Mr. Phelps decided to bring in auditors from other regions to complete the CPD audit, at considerable cost and time.

Plaintiff also opines that the other auditors' involvement was unnecessary, and that it delayed issuance of the CPD audit report.  These supplemental comments are deeply flawed and should be disregarded in their entirety.  First, Plaintiff's opinion concerning the necessity of the outside auditors' efforts is nothing more than his own editorial comment, not a statement of objectively verifiable fact which has bearing on whether a genuine issue exists.  It is evidence of nothing.  Further, Plaintiff's opinion is

unresponsive and irrelevant because Defendant's statement is silent as to the necessity of outside auditor involvement, and the effect such involvement had on the timing of the audit report's issuance.  Since none of the information contained in Defendant's statement is disputed, there is no genuine issue of material fact.

Defendant's Statement of Fact 39:  Plaintiff **ADMITS** that he was informed of his reassignment to HUD OIG headquarters – and the reasons for the reassignment – upon reporting to a meeting there on January 5, 2005; therefore, there is no dispute as to this material fact.

Despite his admission, Plaintiff nevertheless adds that the meeting was "ostensibly to discuss a specific draft audit report."  Defendant's statement does not address the "ostensible purpose" for calling the meeting, it only addresses what Plaintiff was actually told at the meeting.  Plaintiff's comments are, therefore, non-responsive, extraneous and irrelevant.

Defendant's Statement of Fact 46:  Plaintiff's response neither admits nor denies that Mr. Phelps told Mr. Reardon that Plaintiff "could not get in step with that new direction [toward centralized management], which is why it was necessary to bring [Plaintiff] to Headquarters as opposed to allowing him to continue to run a region."  Because Plaintiff fails to address this fact, it must be deemed **ADMITTED** for the reasons previously discussed.

Although Plaintiff fails to address the above-quoted statement, he does attempt to "[a]dmit" that Mr. Phelps told Mr. Reardon that Plaintiff "'wasn't operating the way' OIG Headquarters 'expected him to operate' and that he 'had trouble …making the transition' to the centralized management style of IG Donohue[,]'" which was not noted

in his performance records.  Neither page of Phelps's deposition cited by Plaintiff contain the quotation that Plaintiff "wasn't operating the way" HUD OIG Headquarters "expected him to operate."  Thus, Plaintiff attempt to ascribe these words to Mr. Phelps is erroneous.  See, e.g., Phelps Dep. at 18, 20.  Even if Plaintiff had cited Phelps's deposition correctly, neither party disputes that Mr. Phelps communicated concerns regarding Plaintiff's performance under centralized management to Mr. Reardon, thus, there is no genuine issue of material fact.

> 2.   Plaintiff's Purported "Disputed" Evidence Which Fails To Create A Genuine Issue Of Material Fact

Plaintiff responds to Defendant's factual statements contained in ¶¶ 1, 3, 10, 27, 30, 31, 32, 33, 34, 35, 36, 37, 43 and 45 with purportedly disputed evidence, attempting to create a genuine issue of material fact.  Plaintiff fails because the evidence upon which he relies is irrelevant, non-responsive, inadmissible, and/or immaterial.

Defendant's Statement of Fact 1:  Defendant states that Plaintiff was hired as Assistant Regional Inspector General for Audit ("ARIGA") in Region VI in 1988. Plaintiff **ADMITS** everything in this statement, except the year of his hiring, which he contends occurred in 1989.  Whether he was hired in 1988 or 1989 is immaterial to the instant lawsuit, which concerns discrimination and retaliation allegedly occurring more than a decade after his hiring.  Plaintiff does not explain how this minor discrepancy might possibly bear on this lawsuit; thus, it is immaterial.

Defendant's Statement of Fact 3:  Defendant states that Special Agent Robert Tighe filed an administrative complaint alleging racial discrimination "on or about 2000."  Plaintiff **ADMITS** this statement except for the filing date, which he denies having occurred in 2000, and represents to have actually occurred in 1999.

Notwithstanding Plaintiff's denial, there is no genuine issue of material fact.  First, by challenging Defendant's statement, Plaintiff is essentially arguing with himself. Defendant **relied upon Plaintiff's Complaint at ¶ 15** to state that Mr. Tighe's administrative complaint was filed in 2000.  See, e.g., Defendant's Statement of Fact 3; Pl. Compl. ¶ 15.  Plaintiff's subsequent recollection of Mr. Tighe's filing date may be more accurate than his original one, but this does not create a genuine issue.  Plaintiff cannot create a genuine issue of material fact by (1) stating a proposition, (2) waiting for Defendant to agree to it, and then (3) denying the proposition.

Second, Defendant's statement was correct because it represented that Mr. Tighe's complaint was filed "**on or about** 2000."  A reasonable reading of this statement demonstrates that Defendant understood Mr. Tighe's complaint to have been filed in 2000, or in the years closely preceding or following 2000.  This understanding was ultimately accurate, because Mr. Tighe's administrative complaint was filed in the year immediately preceding 2000.

Third and perhaps most importantly, Defendant was correct as to the general timeframe of Mr. Tighe's administrative complaint as it relates to the facts of this case. Both sides agree that Mr. Tighe filed his claim after Plaintiff became RIGA of Region VI, but several years before Inspector General Donohue assumed his office.  Plaintiff's "denial" is therefore immaterial, and serves only as an attempt to distract the Court.  For these reasons, the minor discrepancy regarding Mr. Tighe's filing date does not create a dispute as to a genuine issue of material fact.

Defendant's Statement of Fact 10:  Defendant states that in February 2002, Mr. Phelps gave Plaintiff an attachment to his performance appraisal which criticized his

performance, and that he also told Plaintiff verbally that he was difficult to manage.

Plaintiff **ADMITS** that Mr. Phelps appended an attachment to his performance appraisal.

Plaintiff neither admits nor denies that the attachment criticized his performance, so this

fact must be deemed **ADMITTED** for the reasons previously discussed. Plaintiff's only

substantive comment concerning the attachment is his view that Mr. Phelps's remarks

were "inappropriate." This is Plaintiff's personal opinion, not a statement of objectively

verifiable fact and is, therefore, of no evidentiary value in these proceedings.

      None of Plaintiff's additional statements creates a dispute of a material fact.

First, Plaintiff denies that he was given the attachment in February 2002. It does not

matter whether Plaintiff received it in February 2002, or the date he claims to have

received it, March 2002. Even if his recollection of the receipt date is accurate, it is

immaterial to this proceeding. The essential fact is not when or how Plaintiff received

the attachment, but that Mr. Phelps produced an attachment critical of Plaintiff's

performance, and subsequently appended it to his appraisal. Plaintiff expressly and

impliedly **ADMITS** both of these points. Therefore, even if there were an issue

regarding Plaintiff's *receipt* of the attachment, it is immaterial.

      Plaintiff also offers that the attachment was removed in April 2002, after he filed

an informal grievance. Defendant's statement makes no representations concerning

whether or when the attachment was removed, thus Plaintiff's unsolicited "further

response" is non-responsive, extraneous and irrelevant. Plaintiff interjects it simply to

distract the Court from his admissions.

      <u>Defendant's Statement of Fact 27</u>: Defendant provided that CPD was concerned

that the draft audit report contained "significant inaccuracies." Plaintiff **ADMITS** that

CPD had concerns, stating that it "identified items that it did not agree with in the draft audit report." Plaintiff neither admits nor denies that CPD was specifically concerned about the draft audit report's accuracy. Because he fails to address this fact, it must be deemed **ADMITTED** for the reasons previously set forth.

Plaintiff offers additional comments, none of which demonstrates a dispute as to a genuine issue of material fact. First, Plaintiff generally characterizes auditee concerns with audit reports as part of "the normal audit review process[.]" Defendant's statement makes no representation concerning any "normal audit review process," nor whether CPD's concerns with the draft audit report were or were not typical of that process. For these reasons, Plaintiff's comment is non-responsive and immaterial. Further, Plaintiff's comment is merely his personal opinion, thus the Court should disregard it in its entirety. The parties agree that CPD expressed concerns regarding the draft audit report's accuracy, so there is no dispute of a genuine issue of material fact.

Plaintiff also purports to "[d]eny the report contained significant inaccuracies." Defendant's statement does not make representations concerning whether the draft CPD audit report contained significant inaccuracies. It simply states that CPD thought so. Plaintiff's comment is, therefore, non-responsive, irrelevant, and immaterial.

Defendant's Statement of Fact 30: Defendant notes that Region VI's audit reports lacked "proper criteria to support the findings." Plaintiff denies this statement without explanation. However, Plaintiff and other witnesses have previously admitted the truth of Defendant's statement by acknowledging that the cost principles in OMB Circular A-87 should not have been applied to CVR. Specifically, Plaintiff testified as follows:

Q:        So using A-87 was incorrect?

A:                    For the contractor, CVR, yes.

<u>See</u> Beard Dep. 69:12-13; Beard Decl. ¶ 54.  Plaintiff's second-in-command, ARIGA

William W. Nixon, also acknowledged that A-87 should not be applied to CVR.  <u>See</u>

Nixon Dep. 104:1-105:11.  In addition, Mr. McLeod testified as follows:

> If there is no contract, and we go by some other criteria that
> has no relevance to the audit, such as in the case of, I
> believe it was in the CVR report, there was reference to
> OMB Circular that didn't apply, that applied only to
> government contracts, not to this type of contract.  We had
> that argument with the regions, we asked OGC for opinion
> on that.  They agreed the wrong criteria was being used, but
> we continued to have to fight the battle that the criteria was
> wrong, and there was nothing you could do about it.

<u>See</u> McLeod Dep. 73: 3-12.  Mr. Phelps also testified to this effect as follows:

> After reviewing the draft report, the Office of Counsel to
> the IG informed [Plaintiff] that this was an inappropriate
> criteria because A-87 applies to non-profits and CVR
> Associates is a "for profit" company.  IG Counsel told
> [Plaintiff] that he should use federal acquisition regulations
> as the criteria for his audit finding.  [Plaintiff] sent in a
> revised draft of his audit report still containing references
> to A-87 while not appropriately demonstrating that the
> applicable federal acquisition regulations were violated.

Phelps Aff. at 2 ¶ 1.

Plaintiff's denial contradicts his own testimony and those of other witnesses.  In

sum, Plaintiff previously admitted what he now attempts to deny.  The parties agree that

to the extent Region VI applied A-87 to CVR, it used the wrong criteria; thus, there is no

dispute as to a genuine issue of material fact.

<u>Defendant's Statement of Fact 31</u>:  Plaintiff **ADMITS** to having reviewed the

CVR audit before it was sent to Headquarters.  Plaintiff then inexplicably adds that Mr.

16

Nixon, his subordinate ARIGA, also reviewed the CVR audit. Defendant's Statement makes no representation concerning whether any persons other than Plaintiff reviewed this audit report. Plaintiff's supplemental comment is non-responsive, irrelevant, and immaterial.

Plaintiff denies that he admitted "that using A-87 was incorrect, " stating only that he conceded that A-87 should not have been applied to all audit targets. In other words, Plaintiff admits that Region VI used A-87 incorrectly to the extent it applied the criteria to a private contractor, CVR. Plaintiff has repeatedly admitted that Region VI should not have applied A-87 to CVR. See Beard Dep. 69:12-13; Beard Decl. ¶ 54. Because the parties agree that Region VI should never have applied A-87 to CVR, there is no dispute of a material fact.

Defendant's Statement of Fact 32: Defendant states that when legal issues were not vetted fully, TOP consulted with OIG legal staff to determine the right criteria to use. Plaintiff neither admits nor denies that TOP took such actions when legal issues were not vetted fully. Therefore, this fact must be deemed **ADMITTED** for the reasons previously discussed.

Rather than respond directly to Defendant's statement, Plaintiff instead challenges it as overbroad and vague. This is a legal argument, not a statement of objectively verifiable fact, and therefore, is outside the scope of LCvR 7(h). Plaintiff then purports to "[d]eny" that he or his Region failed to fully vet legal issues. However, Plaintiff admits repeatedly that the CVR draft audit used A-87 cost principles, which were inapplicable to one of the auditees. See Beard Dep. 69:12-13; Beard Decl. ¶ 54.

Plaintiff cannot claim now that neither he nor his staff ever failed to vet legal issues. If this were true, Region VI would have never mistakenly applied A-87 to CVR.

To support his demonstrably untrue claim that neither he nor his staff failed to vet legal issues fully, Plaintiff cites to former Region VI ARIGA Jerry Thompson's deposition. Thompson states that "[n]ormally, Region VI auditors did not have the need to consult the legal department in conducting an audit. We used criteria that were clearly defined, and with which the auditors were clearly familiar. In the event that a question did arise … we would request a legal opinion." See Thompson Decl. ¶ 16. Thompson's statement does not support Plaintiff's claim that neither he nor his staff ever failed to vet legal issues fully. If anything, Thompson's statement goes to the very heart of the CVR audit report's legal flaws. Specifically, Region VI mistakenly assumed they were right on the law, and failed to consult legal counsel before pressing ahead and using criteria which they felt auditees would be familiar. Mr. Nixon readily concedes that the "number one" reason why Region VI applied A-87 "was just familiarity." See Nixon Dep. at 96, 11-16. Thus, Plaintiff's purported evidence does not support his denial of Defendant's material fact, and is an attempt to distract the Court.

Defendant's Statement of Fact 33: Plaintiff denies that the CVR audit demonstrates his failure to adhere to OIG policy with respect to submitting a survey report. Specifically, Plaintiff notes that ARIGA Will Nixon testified "that the survey memo was not implemented until after the CVR audit report had been submitted." While Mr. Nixon did so testify, he acknowledged later in that same deposition that survey memos had been around *since at least June 2002*, when they were discussed in a HUD OIG Audit Staff Bulletin ("ASB") that Region VI would have received at that time. See

Nixon Dep. at 107-111; ASB-02-10 (Exhibit K to Nixon Dep.).  The ASB required that survey reports for significant external audits be submitted to headquarters, including TOP.  See ASB-02-10 at 3 ¶ 2.  Mr. Nixon testified further that the CVR audit would have qualified as a "significant" external audit.  See Nixon Dep. at 107:15-108:1.

Plaintiff also provides that Headquarters never affirmatively directed Region VI to submit a survey report, and that submitting a report would have been "redundant" because "the CVR audit was assigned by headquarters after a lengthy investigation[.]" However, Mr. Nixon conceded that he "didn't honestly know" whether it was true that the audit's origin relieved Region VI of its responsibility to seek TOP's approval.  See id. at 40:17 - 41:13.

There is no dispute regarding the following facts: (1) survey reports have existed since at least 2002; (2) the CVR audit qualified as a "significant" external audit; (3) headquarters assigned the CVR audit; (4) survey reports for significant external audits were required to be submitted to headquarters; and (5) Region VI never submitted a survey report.  Thus, Plaintiff's purported evidence fails to create a dispute as to Defendant's Statement of Fact 33.

Defendant's Statement of Fact 34:  Plaintiff denies that the CVR audit demonstrates Region VI's use of inappropriate language, by defending a handful of specific words or phrases in the draft CVR audit report, among the 78 instances of inappropriate language identified by headquarters.  See Exhibit 18 (Heist Memorandum) at 10.  Even if the Court assumes *arguendo* that the words or phrases specifically defended by Plaintiff were acceptable – which is a judgment call totally within HUD OIG management's purview – Plaintiff fails to admit or deny that any of the other words or

phrases in the CVR audit identified by headquarters were inappropriate.  Indeed, Plaintiff's own declaration states that he can defend only what he deems as "a great many" of them, not all of them.  <u>See</u> Beard Decl. ¶ 56.  He does not defend the vast majority of these inappropriate words or phrases, such as "permeated," "sloppy," or "fledgling."  <u>See</u> Exhibit 18 (Heist Memorandum) at 10.  Since he neither admits nor denies that these words or phrases are inappropriate for use in an audit report, their impropriety must be **ADMITTED**.

<u>Defendant's Statement of Fact 35</u>:   Plaintiff denies that his supervisors were concerned about his attitude towards Headquarters and its impact upon the Region VI staff.  In support of his denial, Plaintiff provides that he received a positive performance appraisal several months prior to his reassignment.  However, Plaintiff's evidence is not responsive to Defendant's statement.  Defendant has never disputed that Plaintiff received a positive performance appraisal several months prior to his reassignment, so Plaintiff has not created a genuine issue of material fact.  However, supervisors had developed concern over time about his attitude towards headquarters, and they had these concerns when the decision was made to reassign Plaintiff.  <u>See, e.g.</u>, Exhibit 16, Exhibit 17, Exhibit 6 (Heist Dep.) at 114:10-115:1; 116:9-13; Exhibit 5 (Stephens Dep.) at 31:17-32:2; 32:8-33:1; Exhibit 2 (Phelps Dep.) at 63:10-17; 64:2-13.

Plaintiff's response ignores the foregoing fact.  Plaintiff would have the Court believe that since his supervisors did not document their concerns several months prior to his reassignment, that they ***never*** possessed or developed such concerns.  Both sides agree that Plaintiff received a positive appraisal prior to his reassignment, and Plaintiff

neither admits nor denies that his supervisors developed concerns not reflected in the appraisal.  Because he fails to respond, this fact must be deemed **ADMITTED**.

Plaintiff adds that he "did not display a hostile attitude toward Headquarters." However, Defendant's statement pertains only to the concerns of Plaintiff's supervisors. Plaintiff's "further response" is non-responsive, irrelevant, and immaterial.

Defendant's Statement of Fact 36:  Plaintiff denies that he and Region VI displayed an argumentative attitude towards TOP or Headquarters.  However, Plaintiff's opinion of his behavior is irrelevant.  What is relevant is that management found Plaintiff and his Region to be argumentative, which contributed to their decision to reassign him. Evidence of Plaintiff's and Region VI's argumentative behavior is supported by Defendant's Exhibits 10, 14, 15, 18, 21 and 22.

Defendant's Statement of Fact 37:  Plaintiff denies that he could not adjust to the centralized management style that had been put in place, citing a performance appraisal and cash award he received ***months before*** his reassignment.  Both sides agree that Plaintiff received a performance appraisal and cash award months before his reassignment.  However, the fact that Plaintiff received an award for a specific task does not mean that management was satisfied with his overall adjustment.  Plaintiff fails to admit or deny that Headquarters concluded he could not adjust to centralized management.  Since this fact must be deemed **ADMITTED**, there is no genuine issue of material fact.

In addition, Plaintiff provides the extraneous point that he believes he had worked successfully under previous centralized management styles.  Defendant's statement makes no representations concerning Plaintiff's prior experience.  Plaintiff's statement is

non-responsive and immaterial regarding whether management believed he could not

adjust, having previously enjoyed the significant autonomy of a decentralized system

under Inspector General Gaffney.

      Defendant's Statement of Fact 43:  Plaintiff denies that he applied for the position

of Deputy Assistant Inspector General for Audit with the Office of Inspector General for

the Department of Defense (DOD OIG).  Instead, Plaintiff contends that he applied for

the position of Director, Readiness and Logistics Support, DOD OIG.  Defendant

concedes that its initial statement was in error, and that Plaintiff is correct regarding the

job for which he applied.  Since the parties agree, there is no material fact in dispute.

      Defendant's Statement of Fact 45:  Defendant submits that Mr. Phelps told "a lot

of positive things about the [Plaintiff]" to Mr. Reardon.  Plaintiff denies this, citing his

declaration wherein he states that Mr. Reardon "characterized his conversation with Mr.

Phelps as negative."  See Beard Decl. ¶ 61.  However, Plaintiff does not admit or deny

that Mr. Phelps said positive things concerning Plaintiff to Mr. Reardon.  He only

recounts Mr. Reardon's apparent overall impression of the conversation.  This impression

makes no mention of specific comments made by Mr. Phelps.  Therefore, it does not

exclude the possibility that while Mr. Reardon found the overall conversation to be more

negative than positive, it may nevertheless have included positive statements from Mr.

Phelps about Plaintiff.  Since Plaintiff does not directly admit or deny that Mr. Phelps

made positive comments, this fact must be deemed **ADMITTED**.

         3.    Plaintiff's "Affirmative Statement of Material Facts" Does
                Not Warrant Denial of Summary Judgment.

      Plaintiff's Statement includes in Section II an "Affirmative Statement of Material

Facts That Warrant Denial of Summary Judgment."  Contrary to their billing, these

purported facts are either duplicative of Section I of Plaintiff's Statement, irrelevant, immaterial, or otherwise fail to warrant denial of Defendant's Motion for Summary Judgment.

Plaintiff's Statement A, B, C and D:  **UNDISPUTED**.

Plaintiff's Statement E:  Plaintiff recounts specific performance goals implemented by Inspector General Donohue and Region VI's 2005 performance under those goals.  This information is **UNDISPUTED**.  Plaintiff also contends that he "reacted positively" to these changes and that he directed his staff to meet the goals, however, he cites nothing to evidence either his positive attitude or his directions to staff.  Even if true, whether Plaintiff greeted implementation of specific performance goals positively is immaterial to this matter.  What is material is Plaintiff's reaction to – and performance under – ***centralized management***, including his reaction to TOP's questioning of his staff's use of cost principles, ones which he concedes were applied incorrectly.  This is qualitatively different from whether Plaintiff and his staff met quantifiable performance goals.

Plaintiff's Statement F:  Plaintiff recounts statements made by Deputy Inspector General Stephens.  Defendant does **not dispute** that these statements were made, so there is no genuine issue of material fact.

Plaintiff's Statement G:  **UNDISPUTED**.

Plaintiff's Statement H:  Plaintiff states that Mr. McLeod did not identify past Region VI audit reports that fail to comply with OIG audit procedures and standards. Defendant does **not dispute** that Mr. McLeod did not identify such reports in his deposition testimony.  Thus, there is no genuine issue of material fact.

Plaintiff's Statement I:  **UNDISPUTED**.

Plaintiff's Statement J:  **UNDISPUTED**.

Plaintiff's Statement K:  Plaintiff describes characteristics of his new job at headquarters.  This information is **UNDISPUTED**.  However, Plaintiff also states that he received only "low-level, menial work" in his new position.  This is Plaintiff's own opinion of the work he was tasked to perform, not an objectively verifiable statement of fact.  It is evidence of nothing and, therefore, does not create a genuine issue of material fact.

Plaintiff's Statement L:  Plaintiff represents that he was forced to accept his reassignment "[u]nder federal personnel law" to "remain employed by HUD."  Plaintiff is employed by HUD OIG, not by HUD.  In any event, Plaintiff's representation is a legal conclusion, not a statement of fact.  Defendant is not required to respond here to legal arguments, even if styled as a "material fact."  Thus, Plaintiff fails to create a dispute of a genuine issue of material fact.  Plaintiff also recounts personal consequences of his reassignment.  This information is **UNDISPUTED**.

Plaintiff's Statement M:  Plaintiff cites Mr. Heist's deposition testimony concerning the reasons for Plaintiff's transfer.  Defendant does **not dispute** that Mr. Heist so testified.

Plaintiff's Statement N:  Plaintiff recounts deposition testimony by Mr. Heist, Mr. Phelps, and Mr. Stephens.  Defendant does **not dispute** that these men so testified.  Plaintiff also characterizes the cited testimony regarding what role Mr. Heist, Mr. Phelps, and Stephens played in the decision to reassign Plaintiff as "conflicting."  To the extent that each manager has a slightly different recollection as to their respective roles, it is

immaterial.  What is significant is that all three managers concur that they played a role in the process, and that their reasons for Plaintiff's reassignment are consistent.

Plaintiff's Statement O:  Plaintiff describes his participation in Mr. Tighe's EEO complaint.  This information is **UNDISPUTED**.  Plaintiff further states that his affidavit in Tighe's case "was shared with HUD OIG management."  This fact is immaterial, especially since Plaintiff provides no evidence that the affidavit was shared with the allegedly discriminating officials in this case.

Plaintiff's Statement P:  Plaintiff recounts representations Ms. Kuhl-Inclan made to him regarding senior management discussing Plaintiff's affidavit in the Tighe matter.  To the extent Ms. Kuhl-Inclan's remarks are not hearsay, they are immaterial because Plaintiff admits that the senior managers to which she allegedly referred do not include the alleged discriminating officials in this case.  Specifically, Plaintiff testified as follows:

> Q:    How did you learn about those discussions - - first of all, who were they between or amoung?
> A:    Kathy Kuhl-Inclan, Susan Gaffney, Bryan Saddler, who was counsel to the IG, John Connors, deputy inspector general.  I think Phillip Kesaris, who would have been the assistant general for investigations.

See Exhibit 1 (Beard Dep.) at 15:3-8.

Plaintiff's Statement Q:  Defendant does **not dispute** that Plaintiff made the representations described.

Plaintiff's Statement R:  Plaintiff notes that Mr. Heist and Mr. Phelps knew of his deposition in the Tighe case.  This information is **UNDISPUTED**.  However, he then states that as "senior managers in OIG Headquarters, Mr. Beard's deposition in the Tighe

case directly implicated their compliance with Title VII." First, this contradicts Plaintiff's affidavit which states that "the information I provided in connection with the Tighe case did not directly implicate Mr. Phelps . . ." See Beard Decl. at ¶ 36. Morever, Plaintiff provides no evidence that either Mr. Heist or Mr. Phelps had knowledge of the contents of Plaintiff's deposition. Specifically, Mr. Heist testified as follows:

> Q:     Do you recall whether his testimony was favorable
>         to Mr. Tighe?
> A:     I had no knowledge of that, one way or another.

See Exhibit 6 (Heist Dep.) at 57:2-4.

Plaintiff's Statement S: Plaintiff alleges that HUD OIG management took various actions after he was deposed in Tighe v. Cuomo, which he characterizes as "harassing and intimidating." Plaintiff's opinion is irrelevant because the alleged events occurred prior to the December 2, 2002 Settlement Agreement, which started the parties anew with a clean slate. See Exhibit 12 (Settlement Agreement).

Plaintiff's Statement T: Plaintiff represents that Mr. Phelps appended an attachment to Plaintiff's performance appraisal that "unfavorably mischaracterized" his performance review meeting, citing his own deposition at pages 38 and 39 for support. However, Plaintiff actually testified that his objection to the attachment did not concern the *substance* of the document, but *when* he purportedly received it. Plaintiff testified as follows:

> Q:     Do you recall filing a grievance with respect to
>         comments that were made with respect to your 2002
>         performance appraisal?
> A:     I filed an information agreement [sic] with Mr.
>         Phelps when I received a copy of an appraisal that
>         was different than the one I received in February.
> Q:     What about it was different?

| A: | There was a document attached that was not attached to the original appraisal. |
| Q: | What was the substance of the document that was attached that you had a problem with? |
| A: | ***What I objected to was the fact that it was attached. It was not in the appraisal I was given in February 2002.*** |
| Q: | Wasn't there things in the attachment that were critical of your performance? |
| A: | ***Without actually looking at it, I'm not sure what it said.*** |

Beard Dep. at 38:15-39:7 (emphasis added). In addition, any alleged claims of reprisal occurring in 2002 were settled on December 4, 2002, and thus, are irrelevant to this lawsuit.

Plaintiff's Statement U:  **UNDISPUTED**.

Plaintiff's Statement V:  **UNDISPUTED**.

Plaintiff's Statement W:   Plaintiff describes the ways Mr. Phelps and Mr. Heist allegedly harassed him in 2003 and 2003, however, it is **IMMATERIAL** because he failed to report it and it is not the basis for the instant complaint.  See Exhibit 1 (Beard Dep.) at 51:19-23; 54:4-16; 72:27.

Plaintiff's Statement X:  Plaintiff's purported evidence to establish that reprisal occurred between 2003 and 2005 consists of triple hearsay.  Specifically, Plaintiff offers the affidavit of Jerry Thompson, who states that one auditor, speaking on behalf of other auditors, spoke to Mr. Stephens about Plaintiff.  Clearly, this alleged conversation would be inadmissible hearsay.  Inadmissible evidence, of course, is an inadequate basis for avoiding summary judgment.  See FED. R. CIV. P. 56(e) (requiring that affidavits shall set forth such facts "as would be admissible in evidence" at trial); Gleklen v. Democratic Cong. Campaign Comm., Inc., 199 F.3d 1365, 1369 (D.C. Cir. 2000) (holding hearsay evidence insufficient in sex discrimination case to avoid summary judgment: "Verdicts

cannot rest on inadmissible evidence. Gleklen's evidence about the conversation is sheer hearsay; she would not be permitted to testify about the conversation at trial. . . . It therefore counts for nothing.").

Plaintiff's Statement Y: Again, Plaintiff is attempting to overcome the fact that he did not file any complaints or grievances from 2003 to 2005, by arguing that "he feared further retaliation from Heist and Phelps." This is a non-starter. To accept Plaintiff's argument would mean that he could completely ignore the reporting requirements of Title VII. See 42 U.S.C. § 2000e-5(f)(1) (A plaintiff who claims a Title VII violation must file an administrative claim with the EEOC to allow the agency time to act on the alleged violation). Plaintiff was silent for two years; he cannot fill in that gap ex post facto by claiming that he failed to report retaliation because he feared retaliation. Moreover, at the same time, Plaintiff admits having received positive feedback about his performance, "which helped to assure him that Phelps and Heist would not take action against him," he alleges that Phelps and Heist were continuously retaliating against him. He cannot have it both ways.

Plaintiff's Statement Z: **UNDISPUTED**.

Plaintiff's Statement AA: **UNDISPUTED**.

Plaintiff's Statement BB: Plaintiff provides that TOP's work caused "considerable friction with the audit staff in the entire field, not just Mr. Beard's Region." Here, Plaintiff **ADMITS** that his Region had considerable friction with TOP. This fact is **UNDISPUTED**.

Plaintiff's Statement CC: Plaintiff blames Headquarters and TOP for fostering discontent among his staff. Whether they were the initial cause is immaterial, because

what is relevant is how Plaintiff managed his staff, discontented or not, and how that played out in his Region's communications with Headquarters.  Plaintiff testified about his responsibility for his staff's professionalism as follows:

> Q:    And you are responsible for the professionalism of your staff at Region VI, correct?
> A:    What do you mean by professionalism?
> Q:    You are essentially the manager of all of Region VI - - or you were?
> A:    Yes.
> Q:    And as a manager, you are responsible for managing your staff?
> A:    Yes.
> Q:    And that includes making sure that they act in a professional manner?
> A:    Okay?
> Q:    Is that right?
> A:    Yes.
> Q:    Professional manner between themselves, correct?
> A:    Yes.
> Q:    And a professional manner with outside agencies?
> A:    Yes.
> Q:    Folks  - - auditees that they audit, right?
> A:    Yes.
> Q:    And as well as supervisors, yourself included?
> A:    Yes.
> Q:     Going up to folks, supervisors above yourself, correct?
> A:     Yes.

See Exhibit 1 (Beard Dep.) at 29:3 - 30:2.  Plaintiff's second-in-command, ARIGA William W. Nixon, admits that the communication between Region VI (specifically himself and Mr. Beard) and Headquarters got ugly.  Mr. Nixon relates his attitude and communication regarding Headquarters as follows:

> Q:    Opinions ran strong, right?
> A:    I think emotions ran strong.
> Q:    Go ahead.
> A:    There is a couple of actions I regret.
> Q:    Did Mr. Beard do any?

A:    I think the things got ugly, and as an auditor you
realize that it takes two people to get ugly.

Q:    Got ugly between you and TOP?

A:    I think by the region and TOP. **You know, as I
learned, you never argue with an idiot. Spectators
can't tell the difference.** And I think we got
dragged into certain arguments we shouldn't have
been.

Q:    ***Who was the idiot in your analogy?***

A:    ***I don't mean specifically. Substitute in clown.***

Q:    Who was the clown?

A:    I think TOP said some things that were blatantly
wrong and over the top and were sort of offensive.
I don't think they truly appreciated the extent of
their offensiveness, and I think at times, myself
included, including Mr. Beard, took offense, and
took a noticeable offense that, in hindsight, we
probably shouldn't have taken.

Q:    Because you took offense?

A:    Correct. No, we expressed it.
                          . . .

Q:    So you expressed offensive language that you now
regret to TOP?

A:    Well, I regret - - I regret my role in it.

See Nixon Dep. at 78:4 - 79:6; 79:18-20..

Plaintiff's Statements DD:  Plaintiff purports that another Region had difficult

and tense interactions with TOP, suggesting that his Region's behavior was not unusual.

However, nothing in Nancy H. Cooper's declaration suggests that she or her Region IV

audit staff used offensive language towards TOP, or refused to make changes once

ordered to do so by Mr. Heist.  In fact, Ms. Cooper admits that when Mr. Heist directed

her to remove a reference from an audit, after she had vehemently protested the removal,

she complied, recognizing that a failure to do so would be insubordinate.  See Cooper

Decl. at ¶ 14-15; compare Exhibit 15 (June 16, 2004 email) (Laura Nixon questioning

Heist's decision-making).

Plaintiff's Statement EE:  Plaintiff describes Ms. Cooper's self-admitted "vehement" protests against, and reluctant compliance with, Mr. Heist's instructions concerning an audit report.  Although this information is **UNDISPUTED**, it is also **IRRELEVANT** because - -  unlike Plaintiff and Region VI - - Ms. Cooper and Region IV ceased arguing with Mr. Heist once he directed Ms. Cooper to remove a particular finding from an audit report.  Plaintiff also interprets Ms. Cooper's views and purports that similarly situated RIGAs would behave as she "if they felt the change would compromise the integrity of the audit report."  Ms. Cooper's opinion is speculative and, thus, has no evidentiary value to this proceeding.  Id. ¶ 13.  Moreover, Ms. Cooper does not state that the changes directed by management compromised the "integrity" of the report.  Cooper Decl. ¶¶ 12-13.  The term "integrity" does not appear in the paragraphs cited by Plaintiff.  Plaintiff is attempting to imply that management intervened to make her audit report dishonest or deceitful.  Indeed, Ms. Cooper concedes that management intervened only to mitigate language it viewed as inappropriate or inflammatory.  Id. ¶ 11.

Plaintiff's Statement FF:  Plaintiff contends that Ms. Cooper was not subject to adverse action despite her staff's bitterness and morale loss.  This information is **UNDISPUTED**.  Plaintiff contends that "Ms. Cooper and her staff were equally as vocal about their frustrations . . . as Region VI was," however, Plaintiff has no evidence that Ms. Cooper has first-hand knowledge of all work product and the communication that flowed between Region VI and Headquarters.

Plaintiff's Statement GG:  Plaintiff states that "[s]ome of the RIGAs, including Nancy Cooper, took their concerns . . . to DAIGA Phelps."  The citations Plaintiff

provides only concern one conversation between Ms. Cooper and Mr. Phelps, no other conversations between RIGAs and Phelps are provided.  Moreover, Plaintiff was not reassigned to Headquarters because of a single conversation; therefore, this fact is immaterial.

Plaintiff's Statement HH:  Plaintiff states that Region VI never *issued* an audit report without TOP's approval.  This information is **UNDISPUTED** and **IRRELEVANT** since the reasons Plaintiff was reassigned relate to the interaction between Region VI and Headquarters occurring *before* audits were issued in final form. See Def. MSJ at 25-27.

Plaintiff's Statement II:  Plaintiff cites to Pl. Ex. 9 (Heist Deposition) as support for a compliment Mr. Heist gave Mr. Beard's staff  regarding the CPD audit.  This quoted language is not contained in the exhibit.  Even if Mr. Heist complimented Region VI's work on the final CPD audit report, it does not negate the fact that the Inspector General himself had to intervene in the audit review process, and that outside auditors were needed to complete the audit.  See Exhibit 5 (Stephens Dep.) at 33:1 - 34:17. Plaintiff **ADMITS** that the foregoing occurred, but opines speculatively that it was politically motivated.  His opinion does not create a genuine issue of material fact.  See Plaintiff Dcl. at ¶¶ 51-52.

Plaintiff's Statement JJ:  **UNDISPUTED**.

Plaintiff's Statement KK:  **UNDISPUTED**.

Plaintiff's Statement LL:  Mr. Heist's deposition testimony is **UNDISPUTED**, however, it does not negate that an improper criteria was used in the audit; thus, there is no genuine issue of material fact.

      <u>Plaintiff's Statement MM</u>:  Plaintiff's representations concerning HUD Administrative Receiver Carmen Valenti's involvement in initiating the CVR audit are **UNDISPUTED**.

      <u>Plaintiff's Statement NN</u>:  Plaintiff lists the ways in which Headquarters should have been informed about the CVR audit, including monthly teleconferences, briefing papers, and weekly priority reports.  Even if Headquarters was informed of the CVR audit via the methods listed, it does not negate the fact that a survey memo was never submitted.

      <u>Plaintiff's Statement OO</u>:  Plaintiff cites Mr. Nixon's deposition at pages 18 and 19 to establish "that the survey memo was not implemented until after the CVR audit report had been submitted."  On these pages, however, Mr. Nixon states only that Region VI had not been ***asked*** to produce a survey memo, and that Region VI lacked a standard format for such memos when it worked on the CVR audit.  <u>See</u> Nixon Dep. 18:9-19:8.  He does not state that survey memos did not exist at that time.  Mr. Nixon then opines that Region VI should not be held accountable for not producing a survey memo, but he never addresses whether Region VI was otherwise required to submit a survey memo without being asked to do so.  <u>Id.</u>  Indeed, Mr. Nixon later states that Region VI would have received the June 2002 Audit Staff Bulletin referencing such survey memos, even if Region VI had not received formal training on memo formats.  <u>Id.</u> at 107:3-11, 111:6-11:6 ("[T]his June 2002 thing is troubling my little mind at this point.").

      <u>Plaintiff's Statement PP and QQ</u>:  Plaintiff's representation that Region VI received survey memo training when the draft CVR audit report was "at or near completion" is **UNDISPUTED**.  Plaintiff notes that Mr. Nixon testified that Region VI

would have submitted a survey memo if asked.  Defendant does **not contest** that Mr.

Nixon speculated and then offered this **opinion**, so no genuine issue of material fact

exists as this statement.  Whether the survey memo would have been redundant is

immaterial, because it is **UNDISPUTED** that Region VI failed to submit one.

Plaintiff's Statement RR:  Plaintiff avers that Regions do not seek legal opinions

"unless an audit deals with novel issues[,]" and offers this as the excuse for Region VI

not verifying the correct cost principles to apply to CVR before conducting its audit.

What Regions "normally" do is irrelevant.  In this case, Plaintiff **ADMITS** that he used

the wrong cost principles, something that would have been avoided had he sought a legal

opinion.  See Exhibit 1 (Beard Dep.) at 68:19 - 69:13.

Plaintiff's Statement SS:  Plaintiff's statement that Region VI applied criteria in

Office of Management and Budget (OMB) Circular A-87 in its first draft CVR audit

report is **UNDISPUTED**.  Plaintiff then purports to define A-87's scope, and to compare

it to the scope of the Federal Acquisition Regulation (FAR), concluding that there are "no

material differences" between these two sets of criteria.  Defendant does **not dispute** that

Plaintiff and Mr. Nixon testified to this effect.  However, these are purely legal

arguments, not issues of fact.  Moreover, Defendant does not rely on this purported fact

in its motion for summary judgment; the parties agree that Plaintiff and Region VI used

the wrong criteria in the CVR draft audit.  Thus, there is no dispute as to a genuine issue

of a material fact.  See above statement.

Plaintiff's Statement TT:  Plaintiff's purported reasons for using the wrong cost

principle are **UNDISPUTED** and **IMMATERIAL**, because the fact upon which

Defendant relies and which Plaintiff admits, is that he used the wrong criteria.  See Defendant's Responses to Statements RR and SS.

Plaintiff's Statement UU:  Plaintiff's statement that TOP sought a legal opinion regarding CVR, and that the opinion found that the FAR applied to CVR's spending is **UNDISPUTED**.

Plaintiff's Statement VV:  Plaintiff notes that Region VI submitted a revised draft audit report that included FAR citations.  This fact is **UNDISPUTED**.  Plaintiff adds that "[i]n that way, HANO and CVR were both covered by the report."  This also is **UNDISPUTED** since the draft audit report pertained to both HANO and CVR.  Once again, however, Plaintiff opines on the law, arguing that the cost principles under A-87 and the FAR are "the same under both criteria," and thus, adding the FAR to the draft audit report did not change the audit findings.  It is **UNDISPUTED** that Region VI did not alter its findings in the draft CVR audit report even after adding FAR citations, but Plaintiff's contention that doing so was unnecessary is a legal argument, not an issue of fact.  Plaintiff is attempting to create a genuine issue of material fact when none exists.

Plaintiff's Statement WW:  Plaintiff notes the origin of a few words in Region VI's draft audit report to which TOP objected, and that other audit reports may include such words.  This information is **UNDISPUTED** and **IMMATERIAL** because (1) it is Mr. Nixon's opinion; and (2) it fails to address the over seventy (70) examples of inappropriate words Region VI used in the CVR audit.  See Defendant's Exhibit 18 at 10. Moreover, Plaintiff's contrarian attitude toward making any of the changes directed by Headquarters is demonstrated in Defendant's Exhibit 18.

Plaintiff's Statement XX:  The fact that Mr. Nixon and Ms. Cooper were not subjected to an adverse personnel action is **UNDISPUTED**.

Plaintiff's Statement YY:  **UNDISPUTED**.

Plaintiff's Statement ZZ:  It is **UNDISPUTED** that Mr. Reardon sought a recommendation from Mr. Phelps.  Even assuming, *arguendo*, that Plaintiff's representation regarding Mr. Reardon's characterization of their conversation is accurate, it is hearsay and inadmissible.  Moreover, as noted previously, the characterization applies to the overall conversation, and does not negate that Mr. Phelps also made positive comments concerning Plaintiff.  See Defendant's Statement of Fact 45.

Plaintiff's Statement AAA:  Defendant does **not dispute** that Mr. Phelps did not recall mentioning Plaintiff's award to Mr. Reardon.  However, Mr. Phelps did not testify that he ***deliberately*** withheld mentioning Plaintiff's award, at either deposition pages cited by Plaintiff or elsewhere.  In addition, Mr. Phelps was not asked in deposition whether Mr. Reardon asked him if Plaintiff had received awards.  Therefore, it is Plaintiff's conclusory allegation that Mr. Phelps withheld information from Mr. Reardon, which has no evidentiary value to this proceeding.  Plaintiff also cites to Mr. Phelps's deposition at pages 18 and 20 to establish that Mr. Phelps told Mr. Reardon that Plaintiff "wasn't operating the way" OIG Headquarters "expected him to operate."  The quoted language does not appear on the pages cited.  In any event, Defendant does not dispute that Plaintiff failed to meet Headquarters' expectations.

Plaintiff's Statement BBB:  Plaintiff's description of what Mr. Reardon told him is hearsay and, thus, inadmissible.  See Gleklen v. Democratic Cong. Campaign Comm., Inc., supra, 199 F.3d at 1369.  It is **UNDISPUTED** that the position was re-advertised.

Plaintiff's Statement CCC:  Plaintiff makes representations concerning Ms. Elion's work history vis-a-vis her engagement in protected activity, in the hope that the Court will draw an inference that if management retaliated against her (which Defendant disputes), then management retaliated against Plaintiff.  Ms. Elion is not similarly situated to Plaintiff.  When Headquarters Audit Division was disbanded, her entire staff lost their positions, not just Ms. Elion, because the positions no longer existed.  Ms. Elion is simply making a conclusory allegation that her EEO activity played a role, just as Plaintiff does in this case.  See Greene v. Dalton, 164 F.3d 671, 675 (D.C. Cir. 1999) (accepting plaintiff's "conclusory allegations . . . would defeat the central purpose of the summary judgment device, which is to weed out those cases insufficiently meritorious to warrant the expense of a jury trial."); Harding v. Gray, 9 F.3d 150, 154 (D.C. Cir.1993).

Plaintiff's Statement DDD:  Plaintiff makes representations concerning developments in Mr. Groom's work history.  This information is **UNDISPUTED** and **IMMATERIAL** since Ms. Kuhl-Inclan is not an alleged discriminating official in this case.  Defendant also incorporates its response to Statement CCC.  Lastly, Mr. Groom is not a relevant comparator because he was terminated, and Plaintiff was reassigned.

Plaintiff's Statement EEE:  Plaintiff's representations concerning Ms. Lee's work history is **UNDISPUTED** and **IRRELEVANT**.  Likewise, Plaintiff's representations concerning directed reassignments of other HUD OIG personnel is **UNDISPUTED**.

Plaintiff's Statement FFF:  Plaintiff makes representations concerning Ms. Hawkins's work history.  The information regarding what positions she held are **UNDISPUTED**.  However, as noted in Defendant's response to Statement CCC, the fact

that Ms. Hawkins filed an EEO complaint prior to being reassigned is immaterial, as every staff member of Headquarters Audit Division was reassigned.  See Elion Decl. at ¶ 17.

      Plaintiff's Statement GGG:  Plaintiff contends that Deputy Inspector General for Audit Robert Gwin, who is not an alleged discriminating official in this case, instructed Mr. Nixon to "stay neutral" and to "give no appearance of siding with anybody." Whether Mr. Gwin so instructed Mr. Nixon is **IRRELEVANT** and **IMMATERIAL** to Plaintiff's claims of discrimination and retaliation in this case.

      Plaintiff's Statement HHH:  Mr. Nixon's concern about retaliation for participating in this matter is **UNDISPUTED**.  However, when asked about the basis for his concern, he could provide only rumor and speculation.  Mr. Nixon testified as follows:

> Q:    Any particular people involved you're concerned about?  I'm sorry, any particular people that you're concerned about having an adverse affect on your career?
>
> A:    Not anybody by name.  Just the nature of it that will always play in the back of my mind.  Obviously, people whisper.  Obviously, there's rumors, gossip. Even in labor relations/supervisory course I went to, I was thinking about it last night, they even told me that testifying against the organization is not something that you really want on your resume.
>
> Q:    How would that be on your resume?
>
> A:    Everybody knows about it.
>
> Q:    Everybody who?
>
> A:    Well, people that make decisions.
>
> Q:    In HUD OIG?
>
> A:    In HUD OIG or even around the other agencies. All it's gonna take is one person to whisper it if I'm applying for another job.
>
> Q:    Do you have a reason to believe that might come true?
>
> A:    It plays in my mind, yes sir.

Q:  Who are you concerned about, if you came to apply
    for another job?
A:  Nobody by name.
Q:  Were you afraid that by giving evidence in this
    case, you would have to show or give testimony
    that would show that someone in senior
    management in HUD OIG had not been accurate or
    truthful in statements they made?
A:  No, sir.

See Nixon Dep. at 15:2 - 16:8; but see Pl. Ex. 12.

Plaintiff's Statement III:  Plaintiff notes that Mr. Nixon was not promoted to
RIGA of Region VI.  This fact is **UNDISPUTED**, so there is no genuine issue of
material fact.  Plaintiff also represents that HUD OIG previously learned that Mr. Nixon
had worked with Plaintiff's counsel on an affidavit.  Defendant **does not dispute** that
Plaintiff filed a motion with the Court on June 8, 2007, attaching Mr. Nixon's draft
affidavit.  Plaintiff characterizes Mr. Nixon as "exceptionally well qualified" for the
RIGA position.  This is Plaintiff's opinion and, therefore, evidence of nothing.  Lastly,
Mr. Nixon's non-promotion is **IRRELEVANT** to deciding Defendant's Motion for
Summary Judgment.

## III.  CONCLUSION

Based upon the foregoing, Defendant respectfully submits that Plaintiff has failed
to raise a genuine dispute as to any of Defendant's material facts.

Respectfully submitted,

_____/s/_____
JEFFREY A. TAYLOR, DC Bar #498610
United States Attorney

_____/s/_____
RUDOLPH CONTRERAS, DC Bar #434122
Assistant United States Attorney

_____/s/_____
KAREN L. MELNIK D.C. Bar #436452
Assistant United States Attorney
555 4th Street, N.W.
Washington, DC 20530
(202) 307-0338